BB&T BOLI Plan Tr. v. Mass. Mut. Life Ins. Co., 2016 NCBC 34.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

BB&T BOLI PLAN TRUST,

        Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

        Defendant.

---

BB&T BOLI PLAN TRUST, by and through
its Trustee,

        Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 4007

ORDER AND OPINION ON
DEFENDANT'S MOTION FOR
DETERMINATION OF EFFECT OF
VOLUNTARY DISMISSAL AND
DEFENDANT'S MOTION TO DISMISS

15 CVS 2638

{1}    **THIS MATTER** is before the Court upon Defendant Massachusetts Mutual Life Insurance Company's ("Defendant" or "MassMutual") Motion for Determination of Effect of Voluntary Dismissal and For Attorneys' Fees ("Motion to Set Aside Dismissal") in *BB&T BOLI Plan Trust v. Massachusetts Mutual Life Insurance Company*, No. 09 CVS 4007 (Forsyth County) ("*BB&T I*") and Defendant's Motion to Dismiss the Complaint ("Motion to Dismiss") (collectively, the "Motions") in *BB&T BOLI Plan Trust v. Massachusetts Mutual Life Insurance Company*, 15 CVS 2638 (Forsyth County) ("*BB&T II*").

{2}    After considering the parties' briefs in support of and in opposition to the Motions, the appropriate evidence of record, and arguments of counsel at the hearing held on the Motions, the Court hereby **DENIES** the Motion to Set Aside Voluntary Dismissal and **DENIES** the Motion to Dismiss.

*Alston & Bird LLP, by Frank A. Hirsch Jr., Matthew P. McGuire, Heather Adams, and Ryan P. Ethridge, for Plaintiff BB&T BOLI Plan Trust.*

*Skadden, Arps, Slate, Meagher & Flom LLP, by James R. Carroll, Christopher Lisy, and David S. Clancy, and Stevens & Lee, P.C., by E. Thomas Henefer and Julie E. Ravis, and Ellis & Winters LLP, by Matthew W. Sawchak and Jonathan A. Berkelhammer, for Defendant Massachusetts Mutual Life Insurance Company.*

Bledsoe, Judge.

I.

PROCEDURAL AND FACTUAL BACKGROUND

{3}    This matter arises out of protracted litigation between Plaintiff BB&T BOLI Plan Trust ("Plaintiff" or "BB&T Trust") and Defendant MassMutual over Defendant's sale and management of a bank-owned life insurance policy ("BOLI Policy"), which Plaintiff purchased to insure the lives of key employees of BB&T Corporation ("BB&T"), the Plaintiff's grantor.

A.    The BOLI Policy

{4}    BB&T Trust purchased the BOLI Policy from MassMutual in August 2006 for over $112 million.[1]    (*BB&T II* Compl. ¶ 2.)    BOLI policies are regulated by federal tax laws, and while a policy owner may select the accounts into which the premiums are allocated, the policy owner cannot actively manage those assets once allocated.  (*BB&T II* Compl. ¶ 21.)  Rather, the insurer of a BOLI policy is the legal owner of the assets and manages the assets for the benefit of the BOLI purchaser. (*BB&T II* Compl. ¶ 22.)

{5}    Shortly after purchasing the BOLI Policy, BB&T Trust allocated the premiums almost equally between two funds: a BlackRock-managed fund and a Citigroup-managed fund called Falcon (the "Falcon Fund").  (*BB&T II* Compl. ¶ 3.) The Falcon Fund was a non-traditional hedge fund that offered a potentially higher yield with correspondingly higher risk.  (*BB&T II* Compl. ¶ 4.)

---

[1] For the purposes of laying out the factual background, the Court cites the allegations in the *BB&T II* Complaint.  Because the differences in the factual allegations are relevant to the Motion to Dismiss, the Court will specifically note when it relies on a fact in *BB&T II* that was not alleged or in the record in *BB&T I*.

{6} Prior to BB&T Trust's purchase of the BOLI Policy, MassMutual provided BB&T Trust with a Private Placement Memorandum ("PPM") that set out the terms of the BOLI Policy. (*BB&T II* Compl. ¶ 38.) The PPM also included a "stable value option," a policy feature by which BB&T Trust could elect to pay additional fees to MassMutual in exchange for increased protection of its premiums. (*BB&T II* Compl. ¶¶ 42–43.)

{7} A stable value agreement is an agreement between the policy insurer and a third-party stable value provider, usually a major financial services institution. (*BB&T II* Compl. ¶ 28.) The stable value provider essentially agrees to protect the value of the assets from decreases in market value up to a certain amount, allowing the policy owner to carry the cash value of the BOLI account on its books at par without adjusting for decreases in the market value of the assets, so long as the spread between par value and market value does not exceed the limit set forth in the stable value agreement. (*BB&T II* Compl. ¶ 29.) BB&T Trust elected to purchase the stable value option, with Bank of America serving as the stable value provider. (*BB&T II* Compl. ¶¶ 42–43.)

{8} BB&T Trust alleges that the full terms of its agreement with MassMutual, particularly regarding the terms of the stable value agreement ("Stable Value Agreement"), were set forth in a number of documents. The differences in these documents across *BB&T I* and *BB&T II* is a point of contention in the Motion to Dismiss.

{9} In *BB&T I*, BB&T Trust specifically alleged that the parties' contract consisted of: (i) the PPM, which included a summary of the stable value agreement between MassMutual and Bank of America ("SVA Summary"), (*BB&T I* Am. Compl. ¶¶ 38, 123); (ii) the BOLI Policy, including the Stable Value Endorsement ("SVA Endorsement") attached as an addendum thereto (*BB&T I* Am. Compl. ¶¶ 41, 44, 123); (iii) an August 16, 2006 letter agreement ("Letter Agreement") by which MassMutual acknowledged the issuance of the BOLI Policy with the Stable Value Agreement (*BB&T I* Am. Compl. ¶¶ 45, 123); and (iv) "certain other

representations, understandings and agreements between the parties," (*BB&T I* Am. Compl. ¶ 123.)[2]

{10} In *BB&T II*,[3] BB&T Trust additionally alleged that the parties' contract included a Negotiated SVA Term Sheet, dated August 11, 2006, by which MassMutual and BB&T Trust allegedly negotiated the substantive terms of the Stable Value Agreement that would apply to the BOLI Policy. (*BB&T II* Compl. ¶¶ 48, 138.) BB&T Trust also alleged for the first time that MassMutual and Bank of America revised the SVA Summary on September 8, 2006, after the purchase of the BOLI Policy.[4] (*BB&T II* Compl. ¶ 147.)

{11} BB&T Trust alleges that under the terms of the parties' contract, including the Stable Value Agreement, certain downward changes in the value of the Falcon Fund investment would qualify as "Reallocation Events" under which MassMutual was required to notify BB&T Trust and transfer the premiums out of the Falcon Fund into more stable assets. In *BB&T I*, BB&T Trust alleged that the SVA Summary defined the Reallocation Events. (*BB&T I* Am. Compl. ¶¶ 47–48.) In *BB&T II*, BB&T Trust alleges that the Negotiated SVA Term Sheet defined further Reallocation Events. (*BB&T II* Compl. ¶¶ 58, 61–63.) BB&T Trust alleges that certain Reallocation Events occurred in the fall of 2007, during which time

---

[2] In *BB&T I*, BB&T Trust alleged claims against MassMutual for alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, negligent misrepresentation, breach of contract, fraud, and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1. (*BB&T I* First Am. Compl. ¶¶ 94–142). On January 26, 2010, this Court (Diaz, J.) granted MassMutual's Motion to Dismiss and dismissed BB&T Trust's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, and unfair and deceptive trade practices, and allowed BB&T Trust's claims for breach of contract, fraud, and negligent misrepresentation to proceed. Order, *BB&T I* (N.C. Super. Ct. Jan. 26, 2010). On December 4, 2014, BB&T Trust dismissed its fraud claim without prejudice. At the time of BB&T Trust's Voluntary Dismissal in May 2015, the only claims remaining for trial were breach of contract and negligent misrepresentation.

[3] In *BB&T II*, BB&T Trust alleges claims for negligent misrepresentation, breach of contract, and fraud.

[4] In the *BB&T II* Complaint, BB&T Trust abandons the "SVA Summary" name and instead refers to that document as the SVA Term Sheet or the Post-Closing Term Sheet. All of those terms refer to the same document, which was attached as Appendix B to the PPM. (*BB&T I* Am. Compl. ¶ 38; *BB&T II* Compl. ¶ 147.)

MassMutual failed to act to protect the Falcon Fund premiums as agreed, resulting in significant losses to BB&T Trust.

B. The Litigation

{12} BB&T Trust voluntarily dismissed its claims in *BB&T I* under N.C. R. Civ. P. 41(a)(1) on May 1, 2015 (the "Voluntary Dismissal"), twenty-five days before a scheduled jury trial in the matter was to begin. It filed the *BB&T II* complaint the same day. BB&T Trust apparently refiled its case in order to plead theories of liability that it was barred from presenting in *BB&T I*.

{13} On April 15, 2011, BB&T Trust moved for leave to file a second amended complaint. The Court (Murphy, J.) denied BB&T Trust's motion on the grounds of undue delay and undue prejudice, because some of the proposed theories of liability were not explored in the discovery period, which had already closed. Order on Motion to Amend at ¶¶ 12–13, *BB&T I* (N.C. Super. Ct. Jan. 27, 2012). The Court also stated that some of the proposed allegations "smell[ed] of futility and bad faith" for being inconsistent with deposition testimony of Plaintiff's designated representative. *Id.*

{14} The Court later denied MassMutual's summary judgment motion, Order on Motion for Summary Judgment, *BB&T I* (N.C. Super. Ct. Aug. 15, 2013) (Murphy, J.), and the parties began to prepare for trial. In response to concerns raised in pretrial discussions with BB&T Trust, MassMutual moved the Court *in limine* for an order precluding BB&T Trust from presenting evidence, argument, and testimony relating to the theories of liability that it unsuccessfully sought to plead in its proposed second amended complaint. The Court granted MassMutual's motion *in limine*, affirming Judge Murphy's Order on the Motion to Amend and barring BB&T Trust from presenting evidence that supported those rejected theories. Order on Defendants' Motion *in Limine* No. 1 ¶ 20, *BB&T I* (N.C. Super. Ct. Apr. 14, 2015).

{15} Two weeks after the Court's ruling on Defendants' Motion *in Limine* No. 1, BB&T Trust voluntarily dismissed its claims in *BB&T I* and filed a complaint in *BB&T II*. Shortly thereafter, MassMutual filed the Motion to Set Aside Dismissal

in *BB&T I* and then the Motion to Dismiss in *BB&T II*. The Motions have been fully briefed and argued. At the Court's invitation, counsel submitted supplementary briefs, which the Court has considered. The Motions are now ripe for resolution.

## II.

### ANALYSIS

A. MassMutual's Motion to Set Aside Dismissal in *BB&T I*

{16} Defendant's Motion to Set Aside Dismissal requests that the Court deem ineffective and set aside the Voluntary Dismissal. MassMutual argues, and BB&T Trust disputes, that a trial court retains jurisdiction to set aside a Rule 41(a)(1) voluntary dismissal in the limited circumstance where a plaintiff takes a dismissal in bad faith. *Brisson v. Santoriello*, 351 N.C. 589, 597, 528 S.E.2d 569, 573 (2000). Separate from that argument, MassMutual seeks its attorney's fees related to the Motion to Set Aside Dismissal, because a voluntary dismissal under Rule 41 "does not deprive the court of jurisdiction to consider collateral issues such as sanctions that require consideration after the action has been terminated." *Bryson v. Sullivan*, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992).

{17} N.C. R. Civ. P. 41(a)(1) governs the voluntary dismissal of claims:

> Subject to the provisions of Rule 23(c) and of any statute of this State, an action or claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. . . . If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal . . . .

This final sentence is known as Rule 41(a)'s "savings provision," because it allows a plaintiff to refile an action within one year of a voluntary dismissal, even though the underlying limitations period may have expired in the interim. *See Ga.-Pac. Corp. v. Bondurant*, 81 N.C. App. 362, 365, 344 S.E.2d 302, 304 (1986). The savings provision is a distinct feature of North Carolina's Rule 41, which is not present in

its federal counterpart.  *Compare* N.C. R. Civ. P. 41(a)(1) *with* Fed. R. Civ. P. 41(a)(1).

{18}   In general, Rule 41(a) gives a plaintiff broad power over its case.

> The Rule 41(a) voluntary dismissal "has salvaged more lawsuits than any other procedural device, giving the plaintiff a second chance to present a viable case at trial."  2 G. Gray Wilson, *North Carolina Civil Procedure* § 41-1, at 32 (2d ed. 1995).  Many plaintiffs have used "this rule to cure an unforeseen defect in a claim that did not become apparent until trial . . . . The rule also offers a safety net to plaintiff or his counsel who are either unprepared or unwilling to proceed with trial the first time the case is called."  2 G. Gray Wilson, *North Carolina Civil Procedure* § 41-1, at 33.  The purpose of our long-standing rule allowing a plaintiff to take a voluntary dismissal and refile the claim within one year even though the statue of limitations has run subsequent to a plaintiff's filing of the original complaint is to provide a one-time opportunity where the plaintiff, for whatever reason, does not want to continue the suit.  The range of reasons clearly includes those circumstances in which the plaintiff fears dismissal of the case for rule violations, shortcomings in the pleadings, evidentiary failures, or any other of the myriad reasons for which the cause of action might fail.  The only limitations are that the dismissal not be done in bad faith and that it be done prior to a trial court's ruling dismissing plaintiff's claim or otherwise ruling against plaintiff at any time prior to plaintiff resting his or her case at trial.

*Brisson*, 351 N.C. at 597, 528 S.E.2d at 572–73.  MassMutual argues that the two exceptions identified in *Brisson*—that voluntary dismissals cannot be taken in bad faith and cannot be taken to avoid a court ruling—affect BB&T Trust's right to voluntarily dismiss its claims in *BB&T I*.  (Def.'s Mem. Supp. Mot. Determination of Effect of Vol. Dismiss. 7.)  BB&T Trust, on the other hand, argues that the proper place to challenge the Voluntary Dismissal is in *BB&T II*.  In other words, BB&T Trust argues that the *Brisson* exceptions, if present, would bar the application of the savings provision, but would not authorize the Court to set aside the Voluntary Dismissal in *BB&T I*.

{19}   The general rule is that once a plaintiff takes a Rule 41(a)(1) dismissal, "there is nothing the defendant can do to fan the ashes of that action into life[,] and the court has no role to play."  *Brisson*, 351 N.C. at 593, 528 S.E.2d at 570.  The

plain language of Rule 41(a)(1) supports a plaintiff's broad authority to unilaterally dismiss its claims. *Roberts v. Young*, 120 N.C. App. 720, 726, 464 S.E.2d 78, 83 (1995). Our appellate case law upholds this interpretation. Generally, "no order or other approval of the court is necessary" to effect a voluntary dismissal once a plaintiff gives notice under Rule 41(a)(1). *Lowe v. Bryant*, 55 N.C. App. 608, 610, 286 S.E.2d 652, 653 (1982). *See also In re Foreclosure by Rogers Townsend & Thomas, PC*, 773 S.E.2d 101, 103 (N.C. Ct. App. June 2, 2015) (stating that the trial court's orders entered after voluntary dismissal were "without legal effect"); *Carter v. Clowers*, 102 N.C. App. 247, 250–51, 401 S.E.2d 662, 664 (1991) ("[A] Rule 41(a)(1) notice of dismissal is an action taken by the plaintiff ending the suit, and *no action of the court* is necessary to give the notice its full effect."); *Ward v. Taylor*, 68 N.C. App. 74, 78, 314 S.E.2d 814, 819 (1984) (Rule 41(a)(1) "does not require court action, other than ministerial record-keeping functions, to effect a dismissal").

{20} Nevertheless, there are some well-established exceptions to the general rule, and these exceptions limit a plaintiff's ability to terminate an initial action through a Rule 41(a)(1) voluntary dismissal. The rule itself subjects a plaintiff's ability to take a voluntary dismissal to Rule 23(c), which addresses the dismissal of class actions, and any other statutory exception.[5] N.C. R. Civ. P. 41(a)(1). Furthermore, once a defendant asserts a claim for affirmative relief arising out of the same transactions alleged by the plaintiff, the plaintiff cannot take a voluntary dismissal without the defendant's consent. *McCarley v. McCarley*, 289 N.C. 109, 111–12, 221 S.E.2d 490, 492 (1976). Even in instances where a plaintiff does voluntarily dismiss its claims, the trial court retains jurisdiction to consider collateral issues, including requests for attorney's fees under N.C. R. Civ. P. 11 and N.C. Gen. Stat. § 6-21.5. *Bryson*, 330 N.C. at 653, 412 S.E.2d at 331. All of these

---

[5] Following the spirit of Rule 23(c), the Court of Appeals has likewise held that a plaintiff must obtain court approval before taking a voluntary dismissal of a pre-certification class action complaint. *See generally Bennett v. Commer. Coll. of Asheboro, Inc.*, 2016 NCBC LEXIS 24 (N.C. Super. Ct. Mar. 22, 2016).

scenarios impact a plaintiff's right to take a voluntary dismissal of its initial action, but no court has clearly stated whether the *Brisson* exceptions operate similarly.

{21}   The Court concludes that the first *Brisson* exception does not limit BB&T Trust's statutory right to take a voluntary dismissal.  If that exception is met, it would operate to render the Voluntary Dismissal a dismissal with (rather than without) prejudice.  This conclusion is consistent with the general rule that a voluntary dismissal is effective upon filing, and it acknowledges the realities of the procedural posture following a voluntary dismissal.  In *Troy v. Tucker*, the plaintiff took a voluntary dismissal, and the defendant subsequently filed a Rule 60(b) motion seeking relief from the voluntary dismissal, which the trial court denied. 126 N.C. App. 213, 484 S.E.2d 98 (1997).  The Court of Appeals concluded that the appeal of the Rule 60(b) denial was interlocutory because the voluntary dismissal "resulted in there being no action pending."  *Troy*, 126 N.C. App. at 215, 484 S.E.2d at 99.  The Court of Appeals concluded that the defendants were not aggrieved at the trial court level and would only be aggrieved "when the plaintiff files a new action."  *Id.* at 215–16, 484 S.E.2d at 99.  MassMutual, likewise, is only aggrieved by the filing of *BB&T II*.  The Court suspects that had BB&T Trust not refiled their case, MassMutual would not be seeking to set aside the Voluntary Dismissal and proceed to a costly and lengthy trial.  Furthermore, allowing *Brisson*'s bad faith exception to subject all voluntary dismissals to judicial scrutiny would undermine the intent of Rule 41(a) by creating unnecessary barriers for plaintiffs who wish to abandon their claims.

{22}   The Court concludes that the second *Brisson* exception, on the other hand, may limit a plaintiff's ability to take a voluntary dismissal in the initial action.  As discussed below, the second *Brisson* exception is essentially a restatement of Rule 41(a)(1) itself, which does not allow a plaintiff to take a voluntary dismissal after resting his case.  *See Roberts*, 120 N.C. App. at 726, 464 S.E.2d at 83.  This temporal restriction "limit[s] the time within which a plaintiff has the absolute right to dismiss his action . . . ."  *Whitehurst v. Va. Dare Transp. Co.*, 19 N.C. App. 352, 355, 198 S.E.2d 741, 743 (1973).  When a plaintiff attempts to take a voluntary

dismissal after resting its case, the trial court may appropriately set aside the voluntary dismissal and deem it a nullity. *See, e.g.*, *Troy*, 126 N.C. App. at 216–17, 484 S.E.2d at 100 (noting that trial court could have stricken a voluntary dismissal and proceeded to rule on the pending summary judgment motion where plaintiff attempted to take a dismissal after resting his case); *Maurice v. Hatterasman Motel Corp.*, 38 N.C. App. 588, 591–92, 248 S.E.2d 430, 432–33 (1978) (voiding and vacating a voluntary dismissal taken after the plaintiff rested his case). Therefore, if the Court concludes that the second *Brisson* exception is met, the Court may grant the requested relief and set aside the Voluntary Dismissal in *BB&T I*.

{23} Because MassMutual seeks dismissal in both *BB&T I* and *BB&T II*, the Court will consider the merits of MassMutual's arguments as to each of the *Brisson* exceptions. Consistent with the discussion above, the Court considers the first exception as if raised in *BB&T II*, and the second exception as it was actually raised in *BB&T I*.

{24} The bad faith exception to Rule 41(a)(1) is a narrow one; *Brisson* itself states that a Rule 41(a) dismissal may be taken for a myriad of reasons, even, for instance, that the plaintiff or his counsel is "unwilling" to proceed with trial. *Brisson*, 351 N.C. at 597, 528 S.E.2d at 572–73. Our courts have consistently applied the bad faith exception to Rule 41(a) in only one scenario, where the initial complaint fails to conform with the rules of pleading and merely seeks to take advantage of the savings provision. In laying out the bad-faith exception, the *Brisson* court primarily relied on *Estrada v. Burnham*, in which the North Carolina Supreme Court held that a plaintiff had not filed its pleadings in good faith where she filed a bare-bones complaint and took a voluntary dismissal just two minutes later for the admitted purpose of obtaining the one-year extension of the savings provision. 316 N.C 318, 319, 341 S.E.2d 538, 539–40 (1986). After the plaintiff refiled the action, the trial court granted a motion to dismiss the refiled complaint as time barred, and the Supreme Court affirmed, holding that the initial complaint violated the good-faith filing requirement of N.C. R. Civ. P. 11(a) because the plaintiff had no intent to prosecute the litigation. *Id.* at 323, 341 S.E.2d at 542. The

Court concluded, reading the Rules of Civil Procedure as a whole, that "in order for a timely filed complaint to toll the statute of limitations and provide the basis for a one-year 'extension' by way of a Rule 41(a)(1) voluntary dismissal without prejudice, the complaint must conform in all respects to the rules of pleading, including Rule 11(a)." *Id.*

{25}  Relying on *Estrada*, the Court of Appeals has also applied the bad faith exception to Rule 41(a) where the plaintiff willfully and intentionally violated Rule 11(a) and Rule 4 in litigating its initial complaint. *Stocum v. Oakley*, 185 N.C. App. 56, 65, 648 S.E.2d 227, 235 (2007) (holding that the plaintiff could not take advantage of the savings provision following a voluntary dismissal where plaintiff did not attempt service of the initial complaint for two years and represented to the court that discovery was ongoing).  Most recently, our Court of Appeals has clarified that *Estrada* and those cases following it require an initial complaint to "conform in all respects to the rules of pleading contained in Rules 8, 9, 10, and 11 of the North Carolina Rules of Civil Procedure," which govern the form and content of pleadings, in order to benefit from the one year savings provision of Rule 41(a). *Murphy v. Hinton*, 773 S.E.2d 355, 359 (N.C. Ct. App. July 7, 2015) (holding that a plaintiff was not entitled to the savings provision's one year extension where the initial complaint lacked any allegations of negligence and therefore failed to satisfy Rule 8(a)(1)).

{26}  The rationale behind this bad faith exception is that where an initial complaint does not conform with the rules of pleading, a plaintiff should not be entitled to the "safety net" of Rule 41(a)'s savings provision after dismissal. *See Estrada*, 316 N.C at 323, 341 S.E.2d at 542.  Here, MassMutual does not allege that the complaint in *BB&T I* did not conform to the rules of pleading.  Acknowledging that the present situation is not factually identical to precedent, MassMutual argues that whether a voluntary dismissal is taken in bad faith "must be determined on an individualized basis." *Eubank v. Van-Riel*, No. COA11-1088, 2012 N.C. App. LEXIS 727, at *32 n.3 (June 19, 2012) (unpublished).  MassMutual argues that BB&T Trust took the Voluntary Dismissal in bad faith by waiting three

years after the Court's order denying its motion to amend. (Def.'s Mem. Supp. Mot. Determination of Effect of Vol. Dismiss. 10.) The Court declines, however, to extend the bad faith exception so far beyond precedent. Unlike the parties in *Estrada*, *Stocum*, and *Murphy*, BB&T Trust has complied with the general rules of pleading and actively pursued its claims. The Court therefore concludes that BB&T Trust did not take the Voluntary Dismissal in bad faith; to hold otherwise would defeat Rule 41(a)'s broad function as a "safety net."

{27} As for the second exception identified in *Brisson*, that a voluntary dismissal cannot be used to avoid a court's adverse ruling, that exception has only been applied in cases where the plaintiff sought to avoid a pending dispositive ruling. For instance, the Court of Appeals has held that a plaintiff was not entitled to take a voluntary dismissal after the trial court had already signed an order granting summary judgment for the defendant but not yet filed the order with the clerk. *Maurice*, 38 N.C. App. at 591–92, 248 S.E.2d at 432–33 (1978). This exception is, in essence, an extension of Rule 41(a)(1) itself:

> Where a party appears at a summary judgment hearing and produces evidence or is given an opportunity to produce evidence and fails to do so, and the question is submitted to the court for decision, he has "rested his case" within the meaning of Rule 41(a)(1)(i) of the North Carolina Rules of Civil Procedure. He cannot thereafter take a voluntary dismissal under Rule 41(a)(1)(i). To rule otherwise would make a mockery of summary judgment proceedings.

*Id. See also Troy*, 126 N.C. App. at 216, 484 S.E.2d at 99 (holding that plaintiff had rested her case after a summary judgment hearing and therefore could not take a voluntary dismissal under Rule 41(a)(1)(i)). The same principle applies to other pending dispositive orders where the plaintiff has in effect "rested his case." *See Eubank*, 2012 N.C. App. LEXIS 727, at *32 (affirming that voluntary dismissal was ineffective, and thereby leaving in place trial court's 12(b)(6) dismissal with prejudice on the merits, where plaintiff took a voluntary dismissal after the trial court announced its 12(b)(6) ruling but before it entered the formal dismissal order).

{28} Even so, a plaintiff is still entitled to take a voluntary dismissal to avoid a pending unfavorable ruling where the plaintiff has not "rested his case" as

contemplated by Rule 41(a)(1). *Wesley v. Bland*, 92 N.C. App. 513, 515, 374 S.E.2d 475, 476–77 (1988) (holding that plaintiff timely took a voluntary dismissal in the middle of a summary judgment hearing, after the court heard defense counsel's arguments but before plaintiff spoke). More specifically, our case law suggests that so long as the plaintiff has not advanced its arguments about the merits of its claims, the plaintiff has not rested his case and may use Rule 41(a)(1) to avoid a pending dispositive ruling. *See, e.g.*, *Cassidy v. Cheek*, 308 N.C. 670, 674, 303 S.E.2d 792, 795 (1983) (holding that plaintiff was permitted to voluntarily dismiss his claims while defendant's motion to dismiss for failure to comply with a court order was pending); *Schnitzlein v. Hardee's Food Sys., Inc.*, 134 N.C. App. 153, 158, 516 S.E.2d 891, 893 (1999) (holding that plaintiff had not rested his case after the trial court's ruling on a 12(b)(6) motion where the motion only raised questions of federal preemption); *Lowe*, 55 N.C. App. at 610–11, 286 S.E.2d at 653 (holding that where a fully argued motion to dismiss dealt with plaintiff's failure to comply with a court order rather than the allegations of the complaint, plaintiffs had not "rested their case" under Rule 41(a)(1)).

{29} Moreover, taking a voluntary dismissal after receiving an unfavorable ruling on a non-dispositive motion is not prohibited by the second exception. In *Alston v. Duke Univ.*, the Court of Appeals held that the plaintiff was entitled to take a voluntary dismissal after the trial court denied plaintiff's motion to amend the discovery scheduling order. 133 N.C. App. 57, 62, 514 S.E.2d 298, 301 (1999). In fact, the plaintiff took the voluntary dismissal in the middle of a hearing on multiple motions, including defendant's summary judgment motion. *Id.* In upholding the validity of the voluntary dismissal, the Court of Appeals considered as significant that the plaintiff's attorney "made it clear" that he did not wish to argue against summary judgment prior to the trial court's ruling on its discovery motion and gave notice of the voluntary dismissal immediately after the trial court announced its denial of plaintiff's motion. *Id.* ("Plaintiff is not deemed to have rested her case at that point, and was free to take a voluntary dismissal of the

action. Following Plaintiff's voluntary dismissal, this action was not pending before the trial court.")

{30} In sum, the second exception identified in *Brisson* applies to a narrow fact pattern, where a plaintiff who has rested its case on the merits seeks to take a voluntary dismissal to avoid a pending ruling. Taking MassMutual's allegations as true, BB&T Trust took the Voluntary Dismissal to avoid the consequences of the Court's Order on Motion in Limine No. 1 (as it affirmed the Court's Order on the Motion to Amend). Those orders were final, interlocutory orders at the time BB&T Trust dismissed its claims, and BB&T Trust could not be deemed to have "rested its case" prior to taking the Voluntary Dismissal. Therefore, MassMutual's argument that BB&T Trust's dismissal violates the second exception in *Brisson* is without merit.

{31} The Court therefore concludes that BB&T Trust was within its rights in taking the Voluntary Dismissal, and MassMutual is not entitled to relief in either *BB&T I* or *BB&T II* based on the Motion to Set Aside Dismissal. Therefore, *BB&T I* is ended, and the Court may hereafter only consider collateral issues in that action such as costs and attorney's fees. *Bryson*, 330 N.C. at 653, 412 S.E.2d at 331.

1. Attorney's Fees

{32} MassMutual's Motion to Set Aside Dismissal asks that the Court award it attorney's fees pursuant to (i) N.C. Gen. Stat. § 6-21.5, (ii) the Court's inherent authority to sanction litigants for vexatious litigation, and (iii) N.C. R. Civ. P. 11(a). MassMutual seeks attorney's fees dating back to 2012, arguing that BB&T Trust should have taken its voluntary dismissal at that time when Judge Murphy denied its motion to amend. For the following reasons, the Court denies MassMutual's request for attorney's fees.

{33} N.C. Gen. Stat. § 6-21.5 gives the Court discretion to award attorney's fees "to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." Although BB&T Trust voluntarily dismissed its claims without prejudice, MassMutual may still be considered the "prevailing party" for purposes of section 6-

21.5. *Bryson*, 330 N.C. at 664, 412 S.E.2d at 338. MassMutual argues that an award of fees is justified under this statute when a "losing party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 258, 400 S.E.2d 435, 458 (1991).

{34} A court is required to award attorney's fees under N.C. R. Civ. P. 11(a) if a party's action was not "well-grounded in fact, was not legally sufficient, and was interposed for an improper purpose." *VSD Communs. v. Lone Wolf Publ. Group*, 124 N.C. App. 642, 646, 478 S.E.2d 214, 217 (1996).[6] Similarly, once a "case has become meritless, failure to dismiss or further prosecution of the action may result in sanctions" pursuant to the Court's inherent power. *Bryson*, 330 N.C. at 658, 412 S.E.2d at 334; *see also Ashton v. City of Concord*, No. COA02-1257, 2003 N.C. App. LEXIS 1693, at *11 (Aug. 19, 2003) (unpublished) (affirming exercise of inherent authority to order attorney's fees for "vexatious conduct").

{35} Attorney's fees are not warranted on any of those bases here, however, because BB&T Trust's case never became meritless and never lacked a justiciable issue. After Judge Murphy ruled on the motion to amend, BB&T Trust pursued three existing claims through dispositive motions and then took a voluntary dismissal to overcome evidentiary failures and shortcomings in the pleadings, which are reasons recognized as legitimate under Rule 41(a)(1). Indeed, the record does not demonstrate that BB&T Trust was vexatiously prosecuting the rejected theories for the three years between the Order on the Motion to Amend and the filing of MassMutual's Motion *in Limine* No. 1. Rather, the issue appears to have arisen only after the parties' counsel began pretrial discussions and BB&T Trust indicated

---

[6] Rule 11 sanctions and awards of attorney's fees are generally awarded on the basis of an offending "pleading, motion, [or] other paper of a party." N.C. R. Civ. P. 11(a); *Bryson*, 330 N.C. at 655, 412 S.E.2d at 332. *See, e.g.*, *Williams v. Hinton*, 127 N.C. App. 421, 424, 490 S.E.2d 239, 241 (1997) ("Rule 11 applies only to signed pleadings, motions, or other papers. . . . This Court has pointed out that Rule 11 is not a panacea intended to remedy all manner of attorney misconduct.") (internal quotations omitted). Although MassMutual does not clearly identify a specific offending paper in its Motion, the Court will assume without deciding that MassMutual's identification in the context of this case is sufficient for purposes of determining whether the Court should award attorney's fees under Rule 11.

its intent to introduce evidence in support of the theories Judge Murphy had rejected in the Order on the Motion to Amend. At root, MassMutual's primary complaint is that BB&T Trust delayed in taking a voluntary dismissal, and the Court, in the exercise of its discretion, declines to award attorney's fees on that ground in these circumstances.

B. MassMutual's Motion to Dismiss in *BB&T II*

{36} MassMutual moves the Court to dismiss the Complaint in *BB&T II* on two grounds. First, MassMutual alleges that BB&T Trust has failed to plead a legally cognizable injury. Second, MassMutual alleges that BB&T Trust's claims are barred by the applicable statute of limitations.

{37} A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Stanback v. Stanback*, 297 N.C. 181, 185, 254 S.E.2d 611, 615 (1979). "The motion does not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The question on a Rule 12(b)(6) motion is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted. *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted). While the Court does not make findings of fact on a motion to dismiss, the Court may consider, in addition to the complaint, documents to which the complaint specifically refers even though presented by the defendant. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). The Court may also consider records of which it has taken judicial notice. *Wood v. J.P. Stevens & Co.*, 297 N.C. 636, 641, 256 S.E.2d 692, 696 (1979) ("[I]t is clear that judicial notice can be used in rulings on . . . motions to dismiss for failure to state a claim . . . .").

{38} MassMutual has asked the Court to take judicial notice of certain documents from *BB&T I*. (Def.'s Mem. Supp. Mot. Dismiss 6 n.3.) A "[t]rial court[] may properly take judicial notice of 'its own records in any prior or contemporary case when the matter noticed has relevance.'" *Stocum*, 185 N.C. App. at 61, 648 S.E.2d at 232 (quoting Kenneth S. Broun, *Brandeis and Broun on North Carolina*

*Evidence* § 26 (5th ed. 1998)); *see* N.C. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."). The Court's prior records are relevant here because the applicability of the Rule 41 savings provision, which is at issue in the Motion to Dismiss, necessarily requires consideration of the claims in *BB&T I*. *See id.* (holding that the trial court correctly took judicial notice of earlier proceedings in a case raising Rule 41 issues). The Court therefore takes judicial notice of those documents in *BB&T I* pursuant to MassMutual's request.

1. Damages

{39} MassMutual argues that BB&T Trust has failed to allege any legally cognizable injury in *BB&T II*.[7] Under the terms of the BOLI Policy, MassMutual owns the assets in the accounts holding BB&T Trust's invested premiums. (Def.'s Mot. Dismiss Ex. 3, hereinafter "BOLI Policy", 10.) Relying on the complaint's allegation that BB&T Trust suffered damages "representing the difference in its premium belatedly transferred into the BlackRock fund following the Falcon Fund's liquidation, compared to the principal that would be in the BlackRock Fund had MassMutual reallocated pursuant to the parties' agreement," (*BB&T II* Compl. ¶ 115), MassMutual therefore argues that BB&T Trust has only alleged diminution in the value of assets that it does not own. (Def.'s Mem. Supp. Mot. Dismiss 12.)

{40} The BOLI Policy entitles BB&T Trust to receive the payment of death benefits under the policy, (BOLI Policy 23,) or to surrender the policy for its then-cash value, (BOLI Policy 16). MassMutual contends that BB&T Trust cannot allege or prove damages because MassMutual has thus far paid all owed death benefits, and BB&T Trust has not exercised and may never exercise its surrender rights. (Def.'s Supplemental Mem. Supp. Mot. Dismiss 4.)

---

[7] MassMutual raised this argument in *BB&T I* at the summary judgment stage, and the Court (Murphy, J.) denied MassMutual's motion. MassMutual sought to raise this argument again in *BB&T I* by moving *in limine* to exclude BB&T Trust's expert witness on the grounds that there were no legally cognizable damages about which he could testify. The Court refused to consider the argument because MassMutual's requested relief would have required overruling Judge Murphy's summary judgment order. Order on Defendant's Motion *in Limine* No. 2 at ¶ 7, *BB&T I* (N.C. Super. Ct. Apr. 14, 2015.) The Court noted that MassMutual would have the opportunity to make the same argument at the directed verdict stage, at which point the Court would be able to consider it on the merits. *Id.*

{41}   In advancing this argument, MassMutual relies on factually similar cases from other jurisdictions.   In *Wilmington Trust Co. v. Metro. Life Ins. Co.*, the plaintiff purchased a corporate life insurance policy from the defendant and sued the defendant-insurer alleging that the defendant breached its contract by failing to reallocate premiums.   No. 600242/08, 2008 N.Y. Misc. LEXIS 10085, at *12–13 (N.Y. Sup. Ct. Aug. 11, 2008).   Concluding that the plaintiff only owned the "right to be paid the benefits promised under the contracts," which defendant had thus far honored, and that plaintiff only alleged losses related to the decreased value of the account, the court held that the plaintiff had failed to allege any damage other than "unrealized losses to [defendant's] property."   *Id.* at *14.

{42}   In a similar case from Delaware, a plaintiff who owned a corporate life insurance policy sought a declaratory judgment and brought several other claims alleging that the insurer's changes to the contract's surrender provisions gave the insurer improper discretion over whether and when to pay in the event of surrender.   *Aviva Life & Annuity Co. v. Am. Gen. Life Ins. Co.*, No. 8414-VCG, 2014 Del. Ch. LEXIS 60 (Del. Ch. Apr. 29, 2014.)   The Court held that the plaintiff's claim was not ripe for adjudication because any damages suffered to the surrender value of the account were purely speculative until the plaintiff actually exercised its surrender rights.   *Id.* at *46–47.

{43}   Relying on this line of cases, MassMutual also alleges that Delaware substantive law governs Plaintiff's claims.   BB&T Trust agrees that, under the principle of *lex loci delicti*, its claims for fraud and negligent misrepresentation are governed by the laws of Delaware, where the injuries occurred.   As for the breach of contract claim, MassMutual contends that Delaware law governs because two of the four documents relied on as part of the contract—the BOLI Policy and the Letter Agreement—contain Delaware choice of law provisions, while the other two documents are silent on that issue.   (Def.'s Mem. Supp. Mot. Dismiss 9.)   BB&T Trust, however, believes that North Carolina substantive law must govern the contract claim.   This question is relevant to the question of damages because, under *Aviva Life*, MassMutual believes that Delaware law requires a conclusion that

BB&T Trust has not suffered damages, whereas BB&T Trust argues that under North Carolina law it would be entitled to at least nominal damages in the event of a breach. (Def.'s Mem. Opp. Mot. Dismiss 13.)

{44} North Carolina recognizes the general principle that the law of the place where a contract is made typically governs the contract. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Furthermore, our legislature has by statute pronounced that "[a]ll contracts of insurance on property, lives, or interests in this State shall be deemed to be made therein . . . ." N.C. Gen. Stat. § 58-3-1. Construing this statute with the general principle, North Carolina law will apply when a "close connection exists between this State and the interests insured by an insurance policy," although the mere presence of the insured interests at the time of an accident is not a sufficient connection to warrant application of North Carolina law. *Fortune Ins.*, 351 N.C. at 428, 526 S.E.2d at 466. Here, BB&T Trust has alleged that the BOLI Policy insures a substantial number of individuals who live and work in North Carolina, more so than in any other state. (*BB&T II* Compl. ¶ 41.) Viewing BB&T Trust's allegations in the light most favorable to Plaintiff, the Court concludes that North Carolina law may apply to the contract, although the issue cannot be conclusively decided without factual development. *See Martin v. Cont'l Ins. Co.*, 123 N.C. App. 650, 656, 474 S.E.2d 146, 149 (1996) (eschewing strict formulas for determining a sufficient "close connection"). The Court therefore views *Aviva Life* as persuasive authority for purposes of this Motion under Rule 12(b)(6) and reserves judgment concerning the applicable law for BB&T Trust's contract claim.

{45} Regardless of which state's law ultimately applies to the contract, however, the Court concludes that BB&T Trust has sufficiently alleged legally cognizable damages to survive a Rule 12(b)(6) motion. Contrary to MassMutual's contentions, BB&T Trust's allegations are not limited to the diminution in value that allegedly occurred as a result of MassMutual's alleged acts; the complaint specifically alleges that BB&T was required to publicly report $17 million in losses directly related to MassMutual's failure to timely reallocate BB&T Trust's premiums, (*BB&T II*

Compl. ¶¶ 116, 114), and BB&T Trust contends that it has suffered an actual loss through the impairment of BB&T's accounting and death benefits under the BOLI Policy. (Pl.'s Resp. Br. Opp. Mot. Dismiss 14–15). In particular, BB&T Trust alleges that it specifically paid a higher fee for the Stable Value Agreement to protect against these types of accounting losses, which BB&T Trust argues it would not have suffered but for MassMutual's alleged breach of the parties' agreement. (*BB&T II* Compl. ¶¶ 116–17.) Moreover, BB&T Trust contends that the BOLI Policy and the PPM set forth the formula by which MassMutual is required to pay death benefits to BB&T Trust, and that certain aspects of this formula are tied to investment performance, (BOLI Policy 23-24; PPM 11), entitling BB&T Trust to show purported damages in the form of impaired death benefits currently payable. (Pl.'s Resp. Br. Opp. Mot. Dismiss 14–15).

{46} Liberally construing the allegations of the Complaint in BB&T Trust's favor and giving BB&T Trust the benefit of all permissible inferences not inconsistent with facts alleged, the Court cannot conclude that BB&T Trust has failed to allege legally cognizable damages as a matter of law, particularly in light of our Supreme Court's instruction that "Rules 8(a) and 54(c), when read together, reject any strict rule that a certain measure of damages must be specifically sought in the prayer for relief." *Holloway v. Wachovia Bank & Trust Co., N.A.*, 339 N.C. 338, 345–46, 452 S.E. 2d 233, 237 (1994); *see also, e.g.*, *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 32 N.C. App. 400, 408, 232 S.E.2d 846, 851 (1977) ("[I]t is not crucial error to demand the wrong relief" in the complaint.).

{47} Indeed, BB&T Trust has alleged at least some actual loss, unlike the plaintiff in *Aviva Life* who sought a declaratory ruling that changes in policy terms impaired its ability to obtain the policy's surrender value in the event of a surrender. *Aviva Life*, 2014 Del. Ch. LEXIS 60, at *9. Viewing BB&T Trust's allegations in the light most favorable to Plaintiff, the Court concludes that BB&T Trust has sufficiently alleged that it suffered legally cognizable damages to survive

the Motion to Dismiss and that further examination of the sufficiency of Plaintiff's damages claim must await a later stage of this litigation.[8]

2. Statute of Limitations

{48} MassMutual alternatively argues that all of BB&T Trust's claims are time-barred by the statute of limitations. A statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that the plaintiff's claims are so barred. *Reunion Land Co. v. Vill. Of Marvin*, 129. N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998) (citing *Long v. Fink*, 80 N.C. App. 482, 484, 342 S.E.2d 557, 559 (1986)).

{49} BB&T Trust's claims for negligent misrepresentation, fraud, and breach of contract each have a three-year statute of limitations. N.C. Gen. Stat. §§ 1-52(1), (5), and (9). As alleged, these claims accrued more than three years ago, (Def.'s Mem. Supp. Mot. Dismiss 15–18), and would be time-barred if they were brought for the first time in the *BB&T II* complaint. However, BB&T Trust argues that the savings provision of Rule 41(a)(1) has tolled the statute of limitations for the claims pleaded in *BB&T II*.

{50} As stated above, the savings provision provides that "[i]f an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may

---

[8] MassMutual has also raised the issue of BB&T Trust's standing and requests the opportunity to submit supplemental briefing on whether BB&T Trust has alleged an "injury in fact" should the Court determine that North Carolina law applies to Plaintiff's contract claim. ((Def.'s Reply Mem. Supp. Mot. Dismiss 5 n.1.) Under North Carolina law, "an injury in fact" is required to establish standing, *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 391, 617 S.E.2d 306, 310 (2005), and "[s]tanding is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (internal quotation omitted). Based on the Court's conclusion that BB&T Trust has alleged in *BB&T II* that it suffered an actual loss as a result of MassMutual's alleged conduct, the Court is satisfied that, if the Court were to apply North Carolina law to BB&T Trust's contract claim, Plaintiff has satisfactorily pleaded standing for purposes of Rule 12(b)(6). *See, e.g.*, *Bruggeman v. Meditrust Co., L.L.C.*, 165 N.C. App. 790, 795, 600 S.E.2d 507, 511 (2004) (standing requires "that the plaintiff have been injured or threatened by injury or have a statutory right to institute an action") (quotations and citations omitted); *In re Ezzell*, 113 N.C. App. 388, 392, 438 S.E.2d 482, 484 (1994) ("[I]njury in fact" must be "distinct and palpable—and conversely that it not be abstract or conjectural or hypothetical.") (internal citations and quotations omitted). Thus, the Court denies MassMutual's request for supplemental briefing on standing in connection with this Motion.

be commenced within one year after such dismissal . . . ." N.C. R. Civ. P. 41(a)(1). This "long-standing rule allow[s] a plaintiff to take a voluntary dismissal and refile the claim within one year even though the statute of limitations has run subsequent to a plaintiff's filing of the original complaint." *Brisson*, 351 N.C. at 597, 528 S.E.2d at 572. The extension to the statute of limitations is notably limited to refiled actions "based on the same claim."

{51} MassMutual argues that "same claim" requires not only that the causes of action be the same but also that the underlying factual contentions be the same for Rule 41(a)(1)'s savings provision to apply. BB&T Trust argues that the savings provision has tolled the statute of limitations in this case because "[w]here, as here, both actions involve the same parties and the same causes of action arising from the same operative facts, the actions are 'based on the same claims.'" (Pl.'s Resp. Br. Opp. Mot. Dismiss 17.) Relying on our Supreme Court's holding that a voluntary dismissal may be used to "cure an unforeseen defect in a claim" or address "shortcomings in the pleadings [and] evidentiary failures," *Brisson*, 351 N.C. at 597, 528 S.E.2d at 573, BB&T Trust contends that a new action is "based on the same claims" where it involves the same parties, the same right, and the same causes of action. (Pl.'s Resp. Br. Opp. Mot. Dismiss 18.) Here, BB&T Trust has alleged against MassMutual the same three causes of action that it dismissed in *BB&T I*; the complaint in *BB&T II* adds factual allegations and expands the universe of documents on which its claims rest. Therefore, the question before the Court is whether the "same claim" requirement of Rule 41(a)(1) requires strict factual identity between the dismissed and the refiled claims.

{52} It is clear at least that "same claim" does not include independent causes of action with unique elements. *Staley v. Lingerfelt*, 134 N.C. App. 294, 299, 517 S.E.2d 392, 396 (1999). *See also Losing v. Food Lion, LLC*, 185 N.C. App. 278, 284, 648 S.E.2d 261, 265 (2007) ("This Court has long held that the Rule 41(a) tolling of the applicable statute of limitations only applies to the claims in the original complaint, and not to other causes of action that may arise out of the same set of operative facts."). In *Staley*, the Court held that claims asserted for the first time in

the refiled complaint did not get the benefit of the savings provision because, although they arose from the same events as those alleged in the initial complaint, "the defendants were not placed on notice that they would be asked to defend these claims within the time required by the statute of limitations." *Staley*, 134 N.C. App. at 299, 517 S.E.2d at 396.

{53} Within this outer bound, however, a plaintiff has some room to revise its factual allegations. For instance, a plaintiff may typically seek new types of damages in the refiled action so long as they arise from the same causes of action asserted in the first action. *See, e.g.*, *Holley v. Hercules, Inc.*, 86 N.C. App. 624, 628, 359 S.E.2d 47, 50 (1987) (holding that plaintiff's claim for punitive damages could be made for the first time during the one-year savings period because it was merely derivative of the negligence claim pleaded in the first action); *Royster v. McNamara*, 218 N.C. App. 520, 532–33, 723 S.E.2d 122, 131 (2012) (holding that plaintiff's newly-asserted claim for emotional damages was not barred by the statute of limitations because it was simply a description of the damage that he claimed to have suffered in the first action).

{54} Certain derivative claims may also receive the benefit of the savings provision when pleaded for the first time in the refiled action. In *Sloan v. Miller Bldg. Corp.*, the Court of Appeals held that the plaintiff's voluntary dismissal had the effect of extending the time within which his spouse could bring her derivative loss of consortium claim, even though she had not pleaded it in the original action. 128 N.C. App. 37, 40–41, 493 S.E.2d 460, 462–63 (1997). *See also Strawbridge v. Sugar Mt. Resort, Inc.*, 243 F. Supp. 2d 472, 479 (W.D.N.C. 2003) (applying North Carolina law to determine that the savings provision protects a newly-raised plea to pierce the corporate veil because it is a method of imposing liability and derivative of the underlying negligence claim). Thus, strict factual identity between the original and the refiled action is not always necessary to toll the statute of limitations under Rule 41(a). Under *Staley*, the issue appears to be one of notice; extending Rule 41 tolling to new types of damages and derivative claims does not

prejudice a defendant where the original action placed him on notice of the claims against which he would have to defend.

{55} Nevertheless, MassMutual argues that the factual allegations underlying the causes of action must be the same between the original and the refiled action in light of *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 26 S.E.2d 861 (1980). In *Stutts*, the Court of Appeals upheld the dismissal of the plaintiff's refiled claim for libel and slander as time-barred, because the second complaint was not "based on the same claim" as the original action, which also asserted causes of action for slander and libel. *Id.* at 76, 266 S.E.2d at 864. MassMutual argues that *Stutts* stands for the proposition that identity of cause of action is not enough to invoke Rule 41(a)(1) tolling, and that the factual allegations must also be identical. The first action in *Stutts* alleged that Duke Power libelously reported that plaintiff was discharged for a "dishonest act" and then "reasserted the false and libelous allegations against the [p]laintiff" at a hearing requested by plaintiff with the North Carolina Employment Security Commission. *Id.* at 79–80, 266 S.E.2d at 864 ("The first action, then, was based upon proceedings before the Employment Security Commission . . .") In the refiled action, the plaintiff instead alleged that Duke Power's agents and employees libelously reported his termination for a "dishonest act" and then made slanderous statements to the same effect to the plaintiff's coworkers and prospective employers. *Id.*

{56} The Court of Appeals concluded that while the defamation claims in both suits stemmed from Duke Power's discharge of plaintiff, "there the similarity ends." *Id.* While the causes of action were the same in both cases, the defamatory statements were allegedly made to different audiences, at different times, by different individuals, and in different words. The *Stutts* court did not announce a standard by which a court could measure whether a refiled action is "based on the same claim." The Court, however, considers the heightened pleading requirements for defamation relevant in interpreting *Stutts*. *See id.* at 84, 266 S.E.2d at 866 (requiring claims for defamation to allege the defamatory words with sufficient particularity to enable the court to determine whether the statement was

defamatory); *see also Stanford v. Owens*, 76 N.C. App. 284, 289, 332 S.E.2d 730, 733 (1985) (holding that a refiled action asserting a claim for fraud was not "based on the same claim" as an initial action alleging negligent misrepresentation, because fraud is unique and must be pleaded with particularity). The slander claim in the first action was essentially factually independent from the slander claim in the second action, and the two claims could not be considered the same, despite being titled as the same legal claim for relief.

{57} MassMutual also relies on *Williams v. Lynch* to argue that the Court should scrutinize the factual allegations underlying the claims in refiled actions. 225 N.C. App. 522, 528, 741 S.E.2d 373, 377 (2013). In *Williams*, the Court of Appeals held that a claim for professional malpractice in the refiled action related back under Rule 41(a) to the plaintiff's claims for negligence in the voluntarily dismissed action. *Id.* In reaching that conclusion, the court concluded that the two types of claims were synonymous, the plaintiff had essentially relabeled the claim, and the claims asserted identical facts. *Id.* That case does not mandate, however, as MassMutual urges, that a refiled action must contain identical factual allegations as the initial action. *Williams*, by holding that *Losing* and *Staley* are controlling, affirmed that the Rule 41(a) savings provision only applies to "those claims in the second complaint that were included in the voluntarily-dismissed first complaint," *id*. at 526, 741 S.E.2d at 376, and those cases, as discussed above, apply Rule 41(a) to causes of action asserted in the original complaint that give notice to the defendant.

{58} MassMutual argues that by inserting new factual allegations and new documents into the body of documents alleged to be the "contract," BB&T Trust has not asserted the "same claims" in *BB&T II* as it did in *BB&T I*. In particular, while both complaints identify the BOLI Policy with the Stable Value Endorsement as a "valid and binding contract" between the parties, (see *BB&T I* Am. Compl. ¶ 123; *BB&T II* Compl. ¶ 138), MassMutual contends that the specific contractual source of the alleged reallocation event obligations at the core of this case is the Negotiated SVA Term Sheet in *BB&T II* and a document BB&T Trust acknowledges is

"materially different," the SVA Summary, in *BB&T I*. (Def.'s Supplemental Mem. Supp. Mot. Dismiss 2.) MassMutual further contends that BB&T Trust makes certain claims in *BB&T II* that were "not pled at all in *BB&T I*."[9] (Def.'s Supplemental Mem. Supp. Mot. Dismiss 2.)

{59} BB&T Trust responds that its Amended Complaint in *BB&T I* avers that the terms of the parties' agreement that is the subject of BB&T Trust's claims "were set out in the PPM, the BOLI Policy, the August 16, 2006 Letter Agreement, and certain other representations, understandings and agreements between the Parties." (*BB&T I* Am. Compl.¶ 123). BB&T Trust contends that this latter language—"certain other representations, understandings and agreements between the Parties"—put MassMutual on notice that the terms of various unidentified documents, including both the post-closing SVA Summary emphasized in *BB&T I* and the pre-closing Negotiated SVA Term Sheet that is the focus of *BB&T II*, were alleged to evidence the parties' agreement. In further support, BB&T Trust alleges that the PPM included the SVA Summary as an appendix and, because the SVA Summary had not been prepared as of the closing, included the Negotiated SVA Term Sheet at that time, (*BB&T II* Compl. ¶¶ 52, 147), providing further evidence that the agreement alleged in *BB&T I* and *II* was the same.

{60} Although the Court is sympathetic to MassMutual's position, particularly in light of the passage of time since *BB&T I* was filed, the Court concludes that Rule 41(a)'s tolling provision extends to BB&T Trust's claims in *BB&T II*. While adding additional factual detail in *BB&T II* not found in *BB&T I*, BB&T Trust alleges the

---

[9] In particular, MassMutual contends that BB&T Trust's new claims include allegations that (i) MassMutual misrepresented to BB&T Trust that the terms of the SVA would be consistent with those of the Negotiated Term Sheet, (*BB&T II* Compl. ¶¶ 97–100), (ii) the 7% NAV Trigger in the Negotiated SVA Term Sheet was hit in August 2007 without required reallocation, (Compl. ¶¶ 58, 65), (iii) the Standard Deviation Trigger was hit in August 2007 through December 31, 2007 without required allocation, (*BB&T II* Compl. ¶ 65), (iv) MassMutual failed to communicate an "Immunization Period" in the Negotiated Term Sheet in November 2007, (*BB&T II* Compl. ¶¶ 36, 61–63, 105, 110), and (v) MassMutual failed to disclose certain changes to Falcon Fund's guidelines in 2006, 2007 and 2008 (*BB&T II* Compl. ¶¶ 58, 69–73, 84–85, 103). BB&T Trust acknowledges that it is asserting claims in *BB&T II* based on (i), (ii), and (iii) but asserts that (iv) and (v) constitute supporting evidence and are not separate claims for relief. (Pl.'s Reply to Def.'s Resp. to Pl.'s Post-Hearing Br. 3.)

same conduct in support of its causes of action in both operative complaints, including the same alleged statements in August 2006 and September 2007 in support of its fraud and negligent misrepresentation claims and the same alleged actions constituting the alleged breach of the parties' agreement—in particular, MassMutual's alleged failure to monitor BB&T Trust's investment and to use reasonable efforts to cause the reallocation and preservation of the investment following the occurrence of alleged reallocation events. The terms of the parties' agreement are alleged to exist in the same specific documents and in "certain other representations, understandings and agreements between the Parties" in both cases. Each operative complaint requires the factfinder to determine the terms of the parties' agreement based on the various documents alleged to embody those terms.

{61} BB&T Trust has asserted the same causes of action against the same defendant, and added factual allegations for the purpose of curing defects, addressing shortcomings in the pleadings, and remedying evidentiary failures. While BB&T Trust has changed its emphasis as to the specific contract document most at issue in the two operative complaints, the Court is satisfied that the claims asserted in *BB&T I* and *II* "arise out of the same set of operative facts," *Losing*, 185 N.C. App. at 284, 648 S.E.2d at 256, the allegations in *BB&T I* were sufficiently specific to place MassMutual on notice that it would have to defend these claims within the time required by the statute of limitations, *Staley*, 134 N.C. App. at 299, 517 S.E.2d at 396, and the claims in the two operative complaints are "substantially the same, involving the same cause[s] of action and the same right[s]." *Cherokee Ins. Co. v. R/I, Inc.*, 97 N.C. App. 295, 297, 388 S.E.2d 239, 240 (1990). The Court thus concludes that the allegations in *BB&T II* are "based on the same claims" as *BB&T I* for purposes of Rule 41(a) and are therefore not barred by the applicable statute of limitations.

III.

CONCLUSION

{62}   **WHEREFORE**, for the foregoing reasons, the Court hereby **DENIES** the Motion to Set Aside Dismissal in *BB&T I* and **DENIES** the Motion to Dismiss in *BB&T II*.

**SO ORDERED**, this the 29th day of April, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases