Cent. Carolina Surgical Eye Assocs., P.A. v. Matthews, 2022 NCBC 14.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 3201

CENTRAL CAROLINA SURGICAL
EYE ASSOCIATES, P.A. by and
through GERALD JEUTTER,
Receiver,

          Plaintiff,

v.

JOHN D. MATTHEWS, M.D.,

          Defendant.

**ORDER AND OPINION ON RULE
12(c) CROSS-MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

1. **THIS MATTER** is before the Court upon Defendant John D. Matthews, M.D.'s ("Matthews") Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Matthews' Motion"), (ECF No. 31),[1] and Plaintiff Central Carolina Surgical Eye Associates, P.A.'s ("CCSEA"), Rule 12(c) Motion for Judgment on the Pleadings ("CCSEA's Motion;" together, the "Motions"), (ECF No. 29).

2. Matthews contends in his Motion that CCSEA has asserted claims that expand or add to the claims CCSEA previously asserted against Matthews in a prior, now voluntarily dismissed action and that those claims should be dismissed in part or in full because they are time-barred or because they fail to otherwise state a claim.[2]

---

[1] Unless otherwise specified, court filings cited herein have been filed in this action (21 CVS 3201). The case number for cited case filings from other actions will be provided when they are cited for the first time.

[2] (Def. Matthews' Mot. J. on Pleadings Pursuant to Rule 12(c) ¶ 15 [hereinafter "Def.'s Mot."], ECF No. 31.)

3.      CCSEA asserts in its Motion that four of Matthews' counterclaims, each of which seeks recovery of sums Matthews alleges he is owed for unpaid compensation and distributions as an employee and shareholder of CCSEA, are fatally deficient as pleaded and should be dismissed as a matter of law.[3]

4.      After reviewing the Motions, the related briefing, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court **GRANTS in part** and **DENIES in part** each Motion for the reasons set forth below.

*Law Offices of Richard M. Greene, by Richard M. Greene, for Plaintiff Central Carolina Surgical Eye Associates, P.A.*

*Oak City Law LLP, by Robert E. Fields, III, for Gerald A. Jeutter, Jr., Receiver for Central Carolina Surgical Eye Associates, P.A.*

*Pinto Coates Kyre & Bowers, PLLC, by Lyn K. Broom, and Teague Rotenstreich Stanaland Fox & Holt PLLC, by Steven B. Fox and Mallory G. Horn, for Defendant John D. Matthews, M.D.*

Bledsoe, Chief Judge.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.      Factual Background

5.      CCSEA was an ophthalmological medical practice in Greensboro, North Carolina that was formed in 1992 when Richard Epes, M.D. ("Epes") and Matthews sold their interests in a predecessor entity known as Central Carolina Surgical Eye Associates, P.A. ("Old CCSEA") and formed a new medical practice using the same

---

[3] (Pl.'s Rule 12(c) Mot. J. on Pleadings [hereinafter "Pl.'s Mot."], ECF No. 29.)

name.[4] Epes and Matthews acquired all of the stock in the new CCSEA, with Epes holding 75% of the stock and Matthews holding 25%.[5]

6. CCSEA alleges that Matthews entered an Employment Agreement with CCSEA in 1992 to provide ophthalmological services as a part of the sale of Old CCSEA and that Matthews has been a director and officer of CCSEA ever since. (2021 Compl. ¶¶ 5–8). The initial term of the Employment Agreement was for five years, and the Agreement automatically renewed for subsequent five-year terms unless Matthews provided notice of his intent to terminate at least one year prior to the end of any five-year term. (2021 Compl. Ex. A at 2.) The Agreement contained non-competition and non-solicitation covenants purporting to restrict Matthews' ability to compete against CCSEA and solicit its patients and employees.

7. The parties acknowledge that Matthews and six other CCSEA employees left their employment with CCSEA on 19 July 2012 and within days of their departure began providing ophthalmological services under the trade name Triad

---

[4] (Compl. ¶¶ 4–5 [hereinafter "2021 Compl."], ECF No. 4; 2021 Compl. Ex. A, ECF No. 4.1.)

[5] (2021 Compl. ¶¶ 4–5; Def.'s Answer, Mot. Dismiss and Countercl. ¶¶ 4–5 [hereinafter "2021 Answer"], ECF No. 14.) Matthews has filed four separate answers and counterclaims in the lawsuits between these two parties: (i) a 20 August 2015 Motion to Dismiss, Answer, and Counterclaims, ("2015 Answer and Countercl.," ECF No. 10.3 (15 CVS 7266)); (ii) an 8 January 2016 Amended Motion to Dismiss, Answer and Counterclaims for Set-off/Offset and Constructive Trust, ("2015 Am. Answer and Countercl.," ECF No. 289 (15 CVS 1648)); (iii) a 10 June 2021 Answer, Motion to Dismiss and Counterclaims, ("2021 Answer and Countercl.," ECF No. 14); and (iv) a 13 August 2021 Amended Answer, Motions to Dismiss and Counterclaims, ("2021 Am. Answer and Countercl.," ECF No. 25), which amended the 2021 counterclaims but not the 2021 answer. The answer and counterclaim paragraphs of each filing are separately numbered, so, to avoid ambiguity, the answer portions will be cited as "2015 Answer," "2015 Am. Answer," and "2021 Answer," and the counterclaim portions will be cited as "2015 Countercl.," "2015 Am. Countercl.," "2021 Countercl.," and "2021 Am. Countercl."

Retina and Diabetic Eye Center ("Triad Retina") at a fully equipped medical facility located within five miles of CCSEA. (2021 Compl. ¶¶ 14, 16; 2021 Answer ¶¶ 14, 16.) According to CCSEA, the Employment Agreement had automatically renewed for a five-year term through 30 June 2017 and was in full force and effect at the time Matthews and his departing colleagues terminated their employment with CCSEA. (2021 Compl. ¶ 13.)

8.    CCSEA alleges that soon thereafter patients began calling CCSEA to report that Triad Retina had been calling them on behalf of Matthews and soliciting them to become new patients of Triad Retina. (2021 Compl. ¶ 46.) CCSEA further alleges that Matthews used confidential patient information to solicit patients away from CCSEA for Matthews' "financial benefit," ultimately causing "more than 1,400 patients" to leave CCSEA's practice for Triad Retina and causing CCSEA to "suffer significant damages and loss of patient revenue[.]" (2021 Compl. ¶¶ 21, 33–34, 40.)

9.    For his part, Matthews denies the enforceability of the Employment Agreement on various grounds, contends that the Agreement was terminated no later than 2007, rendering him an at-will employee at liberty to leave CCSEA's employment without further obligation thereunder, (2021 Countercl. ¶¶ 14, 23; *see, e.g.*, 2021 Answer ¶ 14), and asserts that he was never an officer or a director of CCSEA, alleging that Epes "effectively shut him out of those roles[,]" (2021 Countercl. ¶ 11; 2021 Answer ¶¶ 27–37, 43–55). He also asserts counterclaims, alleging that during his employment, CCSEA continuously undercompensated him,[6] failed to

---

[6] (2015 Am. Countercl. ¶¶ 16(a)–(b), (d)–(f), (l)–(p), (v), 20–29, 46–51; 2021 Countercl. ¶¶ 15(a)–(b), (d)–(f), (l)–(p), (v), 19–20, 27–28.)

provide him with adequate equipment and facilities,[7] and failed to pay him required distributions.[8]

10. CCSEA is no longer operating and is in receivership. *Old Battleground Props. v. Cent. Carolina Surgical Eye Assocs., P.A.*, 2015 NCBC LEXIS 19, *24 (N.C. Super. Ct. Feb. 25, 2015).

B. Procedural Background[9]

11. CCSEA's receiver, Gerald Jeutter, has filed two actions against Matthews arising from Matthews' departure from his employment with CCSEA in 2012. The complaint initiating the first action (the "First Action") was filed on 17 July 2015 (the "2015 Complaint"). In that action, CCSEA sought damages for Matthews' alleged breaches of contract and fiduciary duty and requested an accounting of and a constructive trust over all income Matthews received from former CCSEA patients after he terminated his employment with CCSEA.[10]

12. Matthews filed an answer and counterclaims in response to the 2015 Complaint on 20 August 2015. (2015 Answer and Countercl.) CCSEA subsequently

---

[7] (2015 Am. Countercl. ¶¶ 17–19; 2021 Countercl. ¶¶ 17–18.)

[8] (2015 Am. Countercl. ¶¶ 30–36; 2021 Am. Countercl. ¶¶ 30–36.)

[9] The procedural history of this case is tortuous. Filings related to the dispute between CCSEA and Matthews have been submitted in four separate case files over the years: (i) 2015 CVS 7266 (the initial litigation between CCSEA and Matthews); (ii) 2015 CVS 1648 (the consolidated case file for numerous pending matters involving the receiverships established for CCSEA and various related entities (*In re Southeastern Eye Center–Pending Matters)*); (iii) 2012 CVS 11322 (the consolidated case file for matters arising in connection with various judgments involving the receiverships established for CCSEA and various related entities (*In re Southeastern Eye Center–Judgments*); and (iv) 2021 CVS 3201 (the current litigation between CCSEA and Matthews).

[10] (Compl. ¶¶ 29, 43, 46 [hereinafter "2015 Compl."], ECF No. 1 (15 CVS 7266).)

moved to strike and dismiss Matthews' counterclaims,[11] contending, in part, that Matthews' counterclaims were asserted in violation of the Court's 22 June 2015 Master Case Management Order ("Master CMO"),[12] which applied to all pending *In re Southeastern Eye Center* matters, including the First Action. In that motion, CCSEA argued that Matthews' counterclaims should be dismissed because they were not presented in accordance with the claims process mandated in the Master CMO for the assertion of claims against CCSEA.[13]

13. On 23 November 2015, after consulting with the parties concerning the proper procedure for litigating and administering the parties' claims against one another, the Court, with the parties' consent, ordered Matthews to withdraw his counterclaims and submit any claims against CCSEA through the process set forth in the Master CMO.[14] At the same time, the Court consolidated the First Action into the *In re Southeastern Eye Center* group of consolidated cases.[15]

14. On 8 January 2016, Matthews withdrew his counterclaims in the First Action, "with the exception of the defense/counterclaims of Set-off/Offset, for a Constructive Trust and reservation of the right concerning the failure to

---

[11] (Pl.'s Br. Supp. Pl.'s Second Mot. to Compel Arbitration and Stay Action, Mot. Strike Countercl. and Mot. Dismiss Countercl. with Prejudice, ECF No. 19 (15 CVS 7266).)

[12] (Case Management Order, ECF No. 82 (15 CVS 1648).)

[13] (Pl.'s Br. Supp. Pl.'s Second Mot. to Compel Arbitration and Stay Action, Mot. Strike Countercl. and Mot. Dismiss Countercl. with Prejudice 5–8.)

[14] (Scheduling Order 2–3, ECF No. 260 (15 CVS 1648).)

[15] (Consolidation Order, ECF No. 259 (15 CVS 1648).)

prosecute[.]"[16]   At the same time, Matthews filed an amended answer and counterclaims ("2015 Answer and Counterclaims"), contending that he was entitled to set-off against any sums he may owe to CCSEA all amounts CCSEA owed to him. (*See generally* 2015 Am. Countercl.)   He also requested an accounting and a constructive trust, and asserted counterclaims against CCSEA for conversion, misappropriation, disposition of assets without shareholder approval, and failure to prosecute derivative claims.  (*See generally* 2015 Am. Countercl.)

15.   After extensive fact and expert discovery and substantial motions practice, CCSEA moved for partial summary judgment and both parties moved to exclude certain expert testimony.  At the hearing on the motions on 24 September 2020, CCSEA announced its intention to voluntarily dismiss without prejudice all of its claims against Matthews under Rule 41 and promptly thereafter refile a new action against Matthews.[17]   CCSEA moved to voluntarily dismiss the action under Rule 41(a)(2) on 30 September 2020,[18] and after full briefing by the parties, the Court granted CCSEA's motion on 12 November 2020, dismissing CCSEA's claims against Matthews without prejudice.[19]   Soon thereafter, on 3 December 2020, the Court

---

[16] (Def.'s Notice of Withdrawal of Def.'s Countercl. Pursuant to Ct.'s Order of November 23, 2015 [hereinafter "Def.'s Notice of Withdrawal of 2015 Countercl."], ECF No. 290 (15 CVS 1648).)

[17] (Scheduling Order and Am. Notice of Hr'g, ECF No. 1340 (15 CVS 1648).)

[18] (Pl.'s Rule 41(a)(2) Mot. for Voluntary Dismissal without Prejudice of Claims Against Def., ECF No. 1343 (15 CVS 1648).)

[19] (Order Granting Pl.'s Rule 41(a)(2) Mot. for Voluntary Dismissal without Prejudice of Claims Against Def., ECF No. 1371 (15 CVS 1648).)

granted, with CCSEA's consent, Matthews' motion to dismiss his counterclaims under Rule 41(a)(2) and 41(c) without prejudice.[20]

16.  After initiating this action on 8 March 2021,[21] CCSEA filed its new complaint against Matthews ("2021 Complaint") on 29 March 2021.  (*See* 2021 Compl.)  CCSEA reasserts in its 2021 Complaint claims for breach of contract[22] and breach of fiduciary duty and adds new claims for constructive fraud, restitution and disgorgement, and violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 ("UDTPA").  CCSEA also makes a new request for punitive damages.  (*See generally* 2021 Compl.)  CCSEA further alleges—again for the first time—that, during Matthews' employment, CCSEA was insolvent and that Matthews took excessive compensation and other money from CCSEA, mismanaged CCSEA's finances, and failed to retain and recruit physicians, all of which contributed to CCSEA's insolvency, breached Matthews' fiduciary duties to CCSEA, and constituted unfair and deceptive trade practices under section 75-1.1.[23]

17.  Matthews filed his Counterclaims on 10 June 2021.  Matthews reasserts his 2015 counterclaims for breach of contract, equitable dividend, violation of the North

---

[20] (Order Granting Def.'s Consent Rule 41(a)(2) and 41(c) Mot. for Voluntary Dismissal without Prejudice of Countercl. Against Pl., ECF No. 1389 (15 CVS 1648).)

[21] (Application and Order Extending Time to File Compl., ECF No. 3.)

[22] The parties stipulate that any of CCSEA's claims for breach of contract based on 16A of the Employment Agreement are withdrawn and not subject to the tolling provisions of Rule 41(a). (CCSEA's Resp. Br. Opp'n Matthews' Mot. J. on Pleadings 9 [hereinafter "Pl.'s Opp'n Br."], ECF No. 42.)

[23] (2021 Compl. ¶¶ 3, 22–26, 41, 58, 63, 75; Amendment to Compl. ¶¶ 68–71 [hereinafter "Amendment to 2021 Compl."], ECF No. 24.)

Carolina Wage and Hour Act, disposition of assets without shareholder approval, and an accounting; seeks recoupment in addition to set-off; and declines to reassert his counterclaims for constructive trust, conversion, misappropriation, and failure to prosecute claims.[24] After each party amended its pleading in August 2021,[25] the parties filed their respective Motions on 3 September 2021. (Pl.'s Mot.; Def.'s Mot.)

18. Matthews' Motion asserts that CCSEA's new and expanded allegations and claims for breach of fiduciary duty, constructive fraud, restitution and disgorgement, violation of the UDTPA, and punitive damages do not enjoy the benefit of Rule 41's savings provision and therefore are time-barred or time-limited. (Def.'s Mot. ¶¶ 13, 15–19.) Matthews also challenges the legal sufficiency of CCSEA's pleading of certain claims and contends, in particular, that CCSEA's UDTPA claim fails as a matter of law because Matthews' actions occurred within a single market participant and fall within the learned profession exception. (Def.'s Mot. ¶ 12.)

19. CCSEA contends in its Motion that Matthews' counterclaims for breach of the Employment Agreement and violation of the Wage and Hour Act are solely for recoupment and, to the extent they are for set-off, they should be dismissed as time-

---

[24] (*See* 2021 Countercl. ¶¶ 22–29, 37–47; 2021 Am. Countercl. ¶¶ 30–36; 2021 Countercl. ¶¶ 48–53.)

[25] CCSEA amended its UDTPA claim to allege that Matthews engaged in commerce in North Carolina and thus that his conduct was "in or affecting commerce" under the UDTPA. CCSEA's amendments also seek to clarify that its UDTPA claim excludes Matthews' "provision of medical services as a professional physician," apparently to avoid application of the learned profession exception to its claim. (Amendment to 2021 Compl. ¶¶ 67–71.) Matthews amended his counterclaim for failure to make distributions to plead that "CCSEA was solvent . . . when the distributions were made and payments were to be made[,]" to remove his prior allegation that the distributions harmed CCSEA's creditors, and to remove a prior reference to N.C.G.S. § 55-6-40(c). (2021 Am. Countercl. ¶¶ 30–36.)

barred. (Pl.'s Mot. ¶ A.) CCSEA asserts that Matthews' counterclaim for failure to make distributions in compliance with N.C.G.S. § 55-6-40 should either be dismissed or time-limited because Matthews failed to plead CCSEA's solvency at the time of the filing of the Counterclaims. (Pl.'s Mot. ¶ B.) Finally, CCSEA contends that Matthews' counterclaim for disposition of assets without shareholder approval should be dismissed because the claim accrues to CCSEA, not Matthews. (Pl.'s Mot. ¶ C)

20. After full briefing, the Court held a hearing on the Motions on 14 October 2021, at which all parties were represented by counsel. The Motions are now ripe for resolution.

II.

LEGAL STANDARD

21. "The purpose of [ ] Rule 12(c) 'is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit' and is appropriately employed where 'all the material allegations of fact are admitted in the pleadings and only questions of law remain.'" *Dicesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974)). In ruling on a motion under Rule 12(c), " '[t]he trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party,' with '[a]ll well pleaded factual allegations in the nonmoving party's pleadings [being] taken as true and all contravening assertions in the movant's pleadings [being] taken as false.'" *Id.* (alterations in original) (quoting *Ragsdale*, 286 N.C. at 137).

22.     To prevail, the moving party must show that "the complaint . . . fails to allege facts sufficient to state a cause of action or admits facts which constitute a complete legal bar thereto." *Van Every v. Van Every*, 265 N.C. 506, 510 (1965).  Of particular relevance here, "[a] judgment on the pleadings in favor of a defendant who asserts the statute of limitations as a bar is proper when, and only when, all the facts necessary to establish the limitation are alleged or admitted." *Flexolite Elec., Ltd. v. Gilliam*, 55 N.C. App. 86, 87–88 (1981).

III.

ANALYSIS

A.      Matthews' Motion for Judgment on the Pleadings

23.     Matthews contends that, to the extent CCSEA has asserted new claims against him, those claims are barred by the applicable statutes of limitations.[26] CCSEA argues to the contrary, contending that its claims were either asserted in the First Action (its claims for breach of fiduciary duty, breach of the UDTPA, and constructive fraud) and are thus timely under Rule 41(a)(1) or merely describe CCSEA's damages or other forms of relief (its claims for punitive damages and restitution and disgorgement) and are therefore not subject to a statute of limitations.[27]

24.     Rule 41(a)(1) permits the voluntary dismissal of claims as follows:

---

[26] (Br. Supp. Def.'s Mot. J. on Pleadings Pursuant to Rule 12(c) 18–23 [hereinafter "Def.'s Supp. Br."], ECF No. 32.)

[27] (CCSEA's Resp. Br. Opp'n Matthews' Mot. J. on Pleadings 12 [hereinafter "Pl.'s Opp'n Br."], ECF No. 42.)

Subject to the provisions of Rule 23(c) and of any statute of this State, an action or claim therein may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before the plaintiff rests his case, or; (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. . . . If an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under this subsection, a new action based on the same claim may be commenced within one year after such dismissal[.]

25. This "long-standing rule allow[s] a plaintiff to take a voluntary dismissal and refile the claim within one year even though the statute of limitations has run subsequent to a plaintiff's filing of the original complaint[.]" *Brisson v. Santoriello*, 351 N.C. 589, 572 (2000). By the Rule's plain language, a refiled complaint is only protected by Rule 41's one-year savings provision if it is "based on the same claim[s]" as the initial complaint. N.C. R. Civ. P. 41(a)(1).

26. The Court of Appeals has determined that for a claim in a refiled action to be "based on the same claim" as asserted in the dismissed action, the complaint in the first action must "give notice of the events and transactions and allow the adverse party to understand the nature of the claim and to prepare for trial." *Haynie v. Cobb*, 207 N.C. App. 143, 149 (2010) (quoting *Murdock* v. *Chatham Cnty.*, 198 N.C. App. 309, 317 (2009)). While strict identity between the two complaints is not necessary to put the adverse party on notice, "[i]t is clear at least that 'same claim' does not include independent causes of action with unique elements." *BB&T Boli Plan Trust v. Mass. Mut. Life Ins. Co.*, 2016 NCBC 34, at *11 (N.C. Super. Ct. Apr. 29, 2016).

27. The Court of Appeals' decision in *Staley v. Lingerfelt*, 134 N.C. App. 294 (1999), is instructive. In that case, the plaintiff asserted claims in the first action for

violation of 42 U.S.C. § 1983 and loss of consortium after he was arrested at the scene of an automobile collision. *Id.* at 295–296. He later dismissed those claims voluntarily under Rule 41. Upon refiling, he alleged identical conduct and reasserted the same claims, but added claims for "assault and battery, false arrest and imprisonment, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, trespass by a public officer, violations of the North Carolina Constitution, and a claim for punitive damages." *Id.* at 296. The Court of Appeals held that all claims were time-barred, except for the request for punitive damages, because

> Each claim is an independent cause of action with unique elements which must be proven by plaintiffs. *Although the claims arise from the same events* as the section 1983 and loss of consortium claims, the defendants were not placed on notice that they would be asked to defend these claims within the time required by the statute of limitations.

*Id.* at 299 (emphasis added). *See also, e.g.*, *Losing v. Food Lion, L.L.C.*, 185 N.C. App. 278, 284 (2007) ("This Court has long held that the Rule 41(a) tolling of the applicable statute of limitations applies only to the claims in the original complaint, and not to other causes of action that may arise out of the same set of operative facts.").

28. Likewise, the Court of Appeals has held that alleging new, factually independent conduct in the refiled complaint, even if it supports a cause of action that was advanced in the initial complaint, can push a claim outside the scope of the initial complaint. For instance, in *Stutts v. Duke Power Co.*, 47 N.C. App. 76 (1980), the Court of Appeals upheld the dismissal of a plaintiff's refiled claim for libel and slander as time-barred, because the second complaint, which also asserted causes of action

for slander and libel, was based on different defamatory statements made at a later time and in front of a different audience. *Id.* at 81–82.

29. Finally, the Court of Appeals has also made clear that when a plaintiff's newly added allegation "is nothing more than a description of the damage that he claims to have suffered and did not constitute the addition of an enforceable claim or cause of action that the statute of limitations had run against," *Royster v. McNamara*, 218 N.C. App. 520, 532 (2012) (cleaned up), Rule 41's one-year savings provision will apply.

30. Mindful of these principles, the Court will address in turn each of those claims Matthews contends CCSEA has newly asserted in this action.

a. Breach of Fiduciary Duty

31. CCSEA's claim for breach of fiduciary duty is subject to a three-year statute of limitations, *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66–67 (2005), and rests on conduct occurring more than three years before the filing of the 2021 Complaint. CCSEA, therefore, must rely upon Rule 41(a)(1)'s savings provision to toll the otherwise applicable statute of limitations and render this claim timely. (Pl.'s Opp'n Br. 16–17.)

32. Matthews argues that the refiled claim has been vastly expanded from its 2015 origins and is supported with fresh factual allegations that pose a new and therefore time-barred claim. (Def.'s Supp. Br. 23.) In particular, Matthews contends that CCSEA never alleged in the 2015 Complaint that CCSEA was insolvent,[28] that

---

[28] (*See* 2021 Compl. ¶¶ 3, 23–25, 41(b)–(c), (h)–(i), (k), 58(f)–(h); Amendment to Compl. ¶ 69(f)–(g), (i)–(k).)

Matthews mismanaged CCSEA,[29] or that Matthews was overcompensated between 2006 and his July 2012 departure.[30] Matthews contends that a fair reading of the 2015 Complaint put him on notice only of his conduct immediately before departure and thereafter, and even then with a tight focus on Matthews' establishment and staffing of Triad Retina and his diversion of patients from CCSEA to that newly formed entity. (Def.'s Supp. Br. 22–23.)

33. CCSEA does not squarely address in its briefing and argument whether the 2015 Complaint contained allegations of insolvency or affirmative mismanagement by Matthews. But CCSEA does contend that its 2015 Complaint put Matthews' compensation at issue because it recited the formula in the Employment Agreement used to calculate Matthews' monthly salary. (Pl.'s Opp'n Br. 17 (citing 2015 Compl. ¶ 5).) CCSEA then argues that Matthews put his 2006–12 compensation at issue in the First Action by seeking in his 2015 Amended Counterclaims an accounting and a constructive trust for any transfers made by CCSEA to the detriment of Matthews during that period. (Pl.'s. Opp'n Br. 17 (citing 2015 Am. Countercl. ¶¶ 59, 63).) Finally, and more generally, CCSEA argues that its fiduciary duty claim cannot be limited only to the incidents expressly alleged in the 2015 Complaint because such a limitation defies North Carolina's notice pleading standards and because the 2015

---

[29] (*See* 2021 Compl. ¶¶ 3, 24–27, 35, 41(h)–(i), (k), 58(e); Amendment to Compl. ¶ 69(c), (f)–(h), (k).)

[30] (*See* 2021 Compl. ¶¶ 3, 22–25, 27, 41(b)–(c), (i), (k), 58(f)–(h), 63, 65–66; Amendment to Compl. ¶ 69(g), (i)–(k).) CCSEA repeats allegations of insolvency, mismanagement, and overcompensation in varying combinations across its claims for breach of fiduciary duty, constructive fraud, restitution and disgorgement, breach of the UDTPA, and punitive damages. (*See generally* 2021 Compl.)

Complaint did not set out a time limit regarding the conduct on which the claim is based. (Pl.'s Opp'n Br. 16–17.)

34. The Court first addresses CCSEA's allegations of its insolvency and initially notes that no permutation of the term "insolvent" or "insolvency" appears in the 2015 Complaint. Nor does the 2015 Complaint allege that CCSEA was unable to pay its debts as they became due or otherwise satisfy its financial obligations to creditors and other stakeholders.[31] The most CCSEA alleges concerning its financial condition in the 2015 Complaint is that Matthews' departure caused CCSEA to "lose significant net profits" over several years and that those lost net profits exceeded $25,000. (*See* 2015 Compl. ¶¶ 16, 23, 29, 43.) This allegation, however, without more does not show insolvency because solvent and insolvent firms alike can suffer significant losses to their net profits. As a result, the Court concludes that CCSEA's insolvency allegations and the expansion of its fiduciary duty claim to include duties arising from CCSEA's insolvency are newly made in the 2021 Complaint and not subject to the savings provision of Rule 41(a).

35. The 2015 Complaint is similarly silent about how Matthews mismanaged CCSEA before he created Triad Retina, terminated his employment, and solicited CCSEA employees and patients in 2012. (2015 Compl. ¶ 28.) Indeed, nothing even suggesting the kind of mismanagement that CCSEA alleges in the 2021 Complaint appears anywhere in the 2015 Complaint. As a result, the Court must conclude that

[31] The 2015 Complaint also does not contain any permutation of terms like "debt," "indebtedness," "obligations," or their equivalents.

CCSEA's pre-departure allegations of Matthews' mismanagement are newly made and not protected by Rule 41(a)'s savings provision.

36. The same is also true about the allegations CCSEA advances to support its right to recover the compensation Matthews was paid between 2006 and his departure from CCSEA in 2012. After careful review, the Court cannot agree with CCSEA that its 2015 Complaint put Matthews on notice that his conduct during the 2006–12 period was at issue in the First Action. The 2015 Complaint specifically identified Matthews' breach as his post-departure efforts to establish Triad Retina as a competing ophthalmology practice using confidential information misappropriated from CCSEA in 2012. (2015 Compl. ¶ 28.) Among its remedies, CCSEA sought a constructive trust over all income Matthews received "from any patients who were formerly Plaintiff's patients *since July 19, 2012*" as a result of Matthews' "breaches of fiduciary duty[,]" (2015 Compl. ¶ 46 (emphasis added)), and CCSEA sought an accounting in its prayer for relief "for all income received by [Matthews] from all who were formerly [CCSEA's] patients." (2015 Compl. at 12.) It is true, as CCSEA points out, that Matthews alleged in his 2015 Answer and Counterclaims that he was underpaid, (*see, e.g.*, 2015 Am. Answer ¶ 15(a), (f)), but Matthews' own affirmative allegation, without more, did not put him on notice that CCSEA sought to recover in the First Action the compensation he received for the six years prior to his 2012 departure based on his alleged breach of fiduciary duty.

37. Based on the above, the Court concludes that CCSEA's breach of fiduciary duty claim pleads new operative facts concerning CCSEA's alleged insolvency and

Matthews' alleged mismanagement and overcompensation. Accordingly, CCSEA's breach of fiduciary duty claim, to the extent it is premised on those allegations, is not subject to Rule 41(a)'s savings provision and must therefore be dismissed as time-barred.

### b. Constructive Fraud

38. The elements of a constructive fraud claim have been recently summarized by our Supreme Court:

> Constructive fraud arises where a confidential or fiduciary relationship exists, and its proof is less exacting than that required for actual fraud. When a fiduciary relation exists between parties to a transaction, equity raises a presumption of fraud when the superior party obtains a possible benefit. To assert a cause of action for constructive fraud, the plaintiff must allege facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

*Head v. Gould Killian CPA Grp., P.A.*, 371 N.C. 2, 9 (2018) (cleaned up). Thus, "[t]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the intent and showing that the defendant benefitted from his breach of duty." *Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 2022-NCCOA-89, P20 (2022) (alteration in original) (citation omitted).

39. CCSEA's constructive fraud claim is subject to a ten-year statute of limitations. *See, e.g.*, N.C.G.S. § 1-56(a); *Chisum v. Campagna*, 376 N.C. 680, 707 (2021) ("[T]he limitations period applicable to constructive fraud claims is ten years[.]"). Matthews argues that CCSEA did not plead constructive fraud in its 2015

Complaint, so its current claim must be dismissed to the extent it relies on conduct arising more than ten years before the 8 March 2021 filing of the 2021 Complaint.

40. CCSEA acknowledges in opposition that it did not caption a claim in its 2015 Complaint as constructive fraud, but it argues that it nevertheless alleged the requisite elements of its 2021 constructive fraud claim in its 2015 Complaint by asserting that Matthews (1) owed fiduciary duties to CCSEA, (2) had access to patient information only because he was CCSEA's fiduciary, and (3) misused that patient information "for [his own] financial benefit[.]" (Pl.'s Opp'n Br. 15–16 (quoting 2015 Compl. ¶ 22).) As such, CCSEA argues that its constructive fraud claim is timely and that Rule 41 permits CCSEA's claim to reach back to conduct occurring on or after 20 August 2005—the date ten years prior to the filing of the 2015 Complaint.

41. The Court agrees with CCSEA, but only with respect to those aspects of CCSEA's breach of fiduciary duty claim that remain after the Court's dismissal of portions of that claim as set forth above.[32] Based on its careful review, the Court concludes that the 2015 Complaint's allegations sufficiently notified Matthews that CCSEA sought to recover against him not only because he breached his fiduciary duty to CCSEA by using its confidential information to solicit its patients but also because he obtained a personal financial benefit from doing so by receiving fees from CCSEA's former patients. (*See* 2015 Compl. ¶ 22.) As a result, even though CCSEA failed to caption a claim as constructive fraud in the 2015 Complaint, the Court concludes that

---

[32] The breach of fiduciary duty underpinning CCSEA's constructive fraud claim is necessarily the same breach of fiduciary duty on which CCSEA's remaining breach of fiduciary duty claim is based.

the allegations in the 2015 Complaint put Matthews on notice of the 2021 constructive fraud claim. *See, e.g.*, *Haynie*, 207 N.C. App. at 149–50 ("Thus, plaintiff did allege the necessary elements to put defendant Jones on notice of the claim of negligent entrustment, even if plaintiff mislabeled or failed to label the claim."). Rule 41's savings provision therefore applies. Matthews' statute of limitations challenge to CCSEA's constructive fraud claim is thus without merit and this aspect of his motion must therefore be denied.

### c. Violation of N.C.G.S. § 75-1.1

42. CCSEA's UDTPA claim is subject to a four-year statute of limitations. N.C.G.S. § 75-16.2.

43. Section 75-1.1 provides as follows:

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.
> (b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

44. Matthews argues that, since CCSEA failed to plead a UDTPA claim in the First Action, it must be dismissed as time-barred because it is a unique claim with distinct elements that rests on conduct occurring more than four years prior to the filing of the 2021 Complaint. (Def.'s Supp. Br. 18.)

45. CCSEA invokes the Court of Appeals' *Haynie* decision in response, contending that, while it did not expressly plead a UDTPA claim in the First Action, the 2015 Complaint nevertheless put Matthews on notice of the factual basis for that claim. (Pl.'s Opp'n Br. 12–13.) In particular, CCSEA contends that the 2015

Complaint pleaded both Matthews' breach of fiduciary duty, which CCSEA argues may constitute an unfair or deceptive trade practice under the UDTPA, (Pl.'s Opp'n Br. 12–13 (citing 2015 Compl. ¶¶ 26–31)), and that Matthews' actions were in or affecting commerce because the 2015 Complaint alleged that Matthews left CCSEA for a competing firm and used CCSEA's confidential information to induce employees to do the same, (Pl.'s Opp'n Br. 13 (citing 2015 Compl. ¶¶ 28–29, 41–43)). CCSEA argues that these two allegations, read in combination, state a UDTPA claim that enjoys the tolling provision in Rule 41(a). (Pl.'s Opp'n Br. 13.)

46. After careful consideration, the Court agrees with Matthews and finds CCSEA's contentions without legal merit. *Haynie* is instructive. To support his newly asserted negligent entrustment claim, the refiling plaintiff in *Haynie* used the same conduct to prove the same elements to achieve the same remedy that he sought in his original negligence claim. 207 N.C. at 148–50. In contrast here, CCSEA must prove different elements to prevail on its UDTPA claim than it would on its breach of fiduciary duty or constructive fraud claims, including proof of an unfair or deceptive act and conduct in or affecting commerce, and a UDTPA claim permits wholly different remedies, including treble damages and attorneys' fees. Even if the Court could read CCSEA's 2015 Complaint to include the conduct on which it relies for its 2021 UDTPA claim, the Court cannot further conclude that Matthews should be deemed to have been on notice of that claim for purposes of Rule 41, particularly given the very different and potentially far more consequential remedies that are available for a violation of section 75-1.1 than exist for a claim for breach of fiduciary duty or

constructive fraud. *See, e.g., Staley*, 134 N.C. App. 299 (rejecting tolling under Rule 41(a) where "[e]ach claim [was] an independent cause of action with unique elements"); *BB&T Boli Plan Trust*, 2016 NCBC 34, at *11 (noting that "same claim" as used in Rule 41(a) "does not include independent causes of action with unique elements").

47.     The Court's conclusion is further supported by the fact that CCSEA's UDTPA claim implicates certain defenses—in particular, whether Matthews' actions were in or affecting commerce or protected by the single company[33] or learned profession[34] exceptions under the UDTPA—that were not at issue in the First Action. *See, e.g., Brannock v. Brannock*, 135 N.C. App. 635, 645–46 (1999) (concluding that a claim brought under a newly enacted statute was not the "same claim" as the original claim under the prior, now repealed statute—even though plaintiff sought the same relief in both actions—because the new statute required different proof, foreclosed prior, available defenses, and permitted new defenses).

48.     The cases that CCSEA relies upon do not change this result. Those cases— *Compton v. Kirby*, 157 N. C. App. 1 (2003), *Governor's Club v. Governor's Club Ltd. P'ship*, 152 N. C. App. 240 (2002), and *Spence v. Spaulding and Perkins, Ltd.*, 82 N.C. App. 665, 668 (1986)—do not involve repleaded claims under Rule 41 and instead

---

[33] The UDTPA does not apply to, "any unfair or deceptive conduct contained solely within a single business," because such action is not "in or affecting commerce." *Wheeler v. Wheeler*, 2018 NCBC LEXIS 38 at *12 (N.C. Super. Ct. Apr. 25, 2018); *White v. Thompson*, 364 N.C. 47, 48 (2010).

[34] For purposes of the UDTPA, required "commerce" "does not include professional services rendered by a member of a learned profession." N.C.G.S. § 75-1.1(b).

merely affirm the well-established proposition that "conduct which constitutes a breach of fiduciary duty and constructive fraud is sufficient to support a UDTP[A] claim." *Compton*, 157 N.C. App. at 20. *See also Governor's Club*, 152 N.C. App. at 244, 249; *Spence*, 82 N.C. App. at 666, 668. The issue under Rule 41, however, is whether Matthews had notice that a UDTPA claim was contained in CCSEA's claims for breach of fiduciary duty and constructive fraud. Because the UDTPA claim involves different elements and significantly different defenses and remedies, the Court concludes that Matthews did not. *See, e.g.*, *Stanford v. Owens*, 76 N.C. App. 284, 289 (1985) ("Plaintiffs' contention that the fraud claim has in effect been before the court all along, since it rests upon somewhat the same allegations that were made in support of the negligent misrepresentation claim when the action was first filed, though appealing to some extent is nevertheless unavailing."); *Staley*, 134 N.C. App. at 299 (to similar effect). Accordingly, the Court concludes that Rule 41's savings provision does not apply, and because CCSEA's UDTPA claim is based on conduct occurring more than four years before it filed the 2021 Complaint, the claim is time-barred and must be dismissed.[35]

### d. Unjust Enrichment (or "Restitution and Disgorgement")

49. Matthews next contends that CCSEA's request for restitution and disgorgement is in fact a disguised, previously unpleaded, and time-barred claim for

---

[35] Although the parties spilled much ink and devoted substantial portions of their arguments in debating whether CCSEA's UDTPA claim should be dismissed on the merits under Rule 12(c), (*see* Def.'s Supp. Br. 8–16; Pl.'s Opp'n Br. 3–9; Def.'s Reply Br. in Resp. to Pl.'s Opp'n Br. 3–5, ECF No. 55), the Court need not address those arguments in light of the Court's decision to dismiss on statute of limitations grounds as discussed above.

unjust enrichment.[36]    In opposition, CCSEA argues that Matthews has mischaracterized its demand for restitution and disgorgement—an equitable remedy—as a claim for unjust enrichment—a cause of action that must be brought within three years of accrual.  (Pl.'s Opp'n Br. 13–14.)

50.    The Court agrees with CCSEA.  "As with a constructive trust, a request for 'disgorgement of compensation' [is] considered a remedy and not a cause of action." *Global Textile All., Inc. v. TDI Worldwide, LLC*, 2018 NCBC LEXIS 159, *39–40 (N.C. Super. Ct. Nov. 29, 2018).  Rather than existing as an affirmative claim, "[r]estitution measures the remedy by the wrongdoer's unjust enrichment, and seeks to force disgorgement of that gain."  *Potter v. Hilemn Labs., Inc.*, 150 N.C. App. 326, 335 (2002).  Statutes of limitation, however, are "not determined by the remedy sought, but by the substantive right asserted by plaintiffs."  *Toomer*, 171 N.C. App. at 66 (citation omitted).

51.    As a result, because CCSEA has asserted claims that both permit restitution or disgorgement as a remedy and survive Matthews' challenge under Rule 12(c), Matthews' motion seeking to deny CCSEA the benefit of these remedies at this stage must be denied.  *See, e.g.*, *Booher v. Frue*, 98 N.C. App. 570, 580 (1990) ("Imposition of a constructive trust (i.e., recovery in restitution or for unjust enrichment) is one possible remedy available to plaintiffs for defendant's breach of fiduciary duty."); *Housing, Inc. v. Weaver*, 37 N.C. App. 284, 294 n.1 (1978) ("[O]ne who breaches his fiduciary duty can be forced to disgorge his ill-gotten gains.").

---

[36] (Def.'s Supp. Br. 18–19 (citing *Housecalls Home Health Care Inc. v. State*, 200 N.C. App. 66, 70 (2009)).)

e. Punitive Damages

52. Matthews seeks to dismiss CCSEA's request for punitive damages as a standalone claim and also to the extent that the claims on which the relief is based are dismissed under Rule 12(c). (Def.'s Supp. Br. 17.) CCSEA's opposition appears focused on a separate point, namely that North Carolina law does not consider punitive damages to be "an enforceable claim or cause of action that the statute of limitations ha[s] run against."[37]

53. Both parties are correct. First, "[p]unitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action." *Collier v. Bryant*, 216 N.C. App. 419, 434 (2011). Accordingly, to the extent CCSEA asserts a claim for punitive damages, that claim must be dismissed,[38] and to the extent the Court has dismissed claims under Rule 12(c), punitive damages cannot be awarded "as incidental damages" to those claims.

54. In addition, North Carolina courts "have usually not required the pleader to specifically plead, by name, punitive damages[.]" *Holley*, 86 N.C. App. at 627. Rather, our courts have held that "it is enough that the facts tending to establish the aggravated character of the wrong are alleged, and that characterizing a party's conduct as being wilful [sic], or wanton, or reckless without alleging the specific acts relied upon are but conclusions that add nothing to the allegation." *Id*. at 627–28. Consequently, our courts have routinely applied Rule 41 to permit refiling parties

---

[37] (Pl.'s Opp'n Br. 14 (quoting *Holley v. Hercules, Inc.*, 86 N.C. App. 624, 629 (1987)).)

[38] The Court's dismissal of CCSEA's punitive damages "claim" in no way impairs CCSEA's right to seek punitive damages as a remedy, where appropriate, for its remaining claims.

who have previously pleaded facts showing willful, wanton, or reckless conduct to plead such facts in greater detail or with further characterization upon refiling. *See, e.g.*, *Staley*, 134 N.C. App. at 298–300 (applying Rule 41 to permit a newly pleaded request for punitive damages to survive because the underlying claim was pleaded in the first action); *Holley*, 86 N.C. App. at 628 (same). Because CCSEA pleaded facts in the 2015 Complaint permitting a factfinder to conclude that Matthews engaged in willful, wanton, or reckless conduct, the Court concludes that CCSEA's request for punitive damages in this action is not barred under Rule 41.

B. CCSEA's Motion for Judgment on the Pleadings

    1. Matthews' First and Third Counterclaims for Set-Off/Recoupment for Breach of Contract and Violation of the Wage and Hour Act

55. CCSEA challenges four counterclaims Matthews has asserted in the Second Action for set-off or recoupment that were also pleaded in the First Action. The Court addressed the distinctions between set-off and recoupment in the First Action as follows:

> "the terms 'offset,' or 'set-off' as it is also known, and 'recoupment' are distinct remedies with distinct legal definitions." *Mikels v. Unique Tool & Mfg. Co.*, No. 5:06CV32, 2007 U.S. Dist. LEXIS 91814, at \*66 n.7 (W.D.N.C. Dec. 3, 2007) (internal citation omitted). Set-off is defined as "[a] defendant's counterdemand against the plaintiff, *arising out of a transaction independent of the plaintiff's claim.*" SETOFF, Black's Law Dictionary (10th ed. 2014) (emphasis added). As a general proposition, a claim for set-off, whether asserted as an affirmative defense or counterclaim, is subject to the applicable statute of limitations. *Perry v. First Citizens Bank & Tr. Co.*, 223 N.C. 642, 644, 27 S.E.2d 636, 637 (1943). Recoupment is defined as a "[r]eduction of a plaintiff's damages because of a demand by the defendant *arising out of the same transaction.*" RECOUPMENT, Black's Law Dictionary (10th ed. 2014) (emphasis added). In contrast to set-off, a claim for recoupment is not subject to the otherwise applicable limitations period. *Ken-Lu Enters.,*

*Inc. v. Neal*, 29 N.C. App. 78, 81, 223 S.E.2d 831, 833 (1976) ("[T]he borrowers' counterclaim is in the nature of setoff, not recoupment. As such, it is subject to the statute of limitations.").

*In re Se. Eye Ctr.-Pending Matters*, 2016 NCBC LEXIS 59, at *21 (N.C. Super. Ct. July 22, 2016). Considering this distinction, the Court concluded in the First Action that Matthews' counterclaims for breach of the Employment Agreement and violation of the Wage and Hour Act were in the nature of recoupment "because they [arose] from the same transactions as CCSEA's claims—i.e., the employment relationship between CCSEA and Dr. Matthews." *Id.* at *22.

56. In this Second Action, the parties agree that Matthews' first counterclaim for breach of the Employment Agreement and third counterclaim for violation of the North Carolina Wage and Hour Act seek recoupment rather than set-off because they arise from Matthews' employment contract with CCSEA.[39] The Court agrees, for the same reasons as before.

57. The parties disagree, however, on what follows from that conclusion. CCSEA argues that, because recoupment permits a reduction of damages "arising out of the same transaction," *id.*, "any damages that Matthews is able to prove arising out of these claims will only be reductions against damages that CCSEA sustained because of Matthews' breaches of the Employment Agreement[,]" (Pl.'s Supp. Br. 6). CCSEA therefore seeks a declaratory judgment to this effect under Rule 12(c).

---

[39] (CCSEA's Br. Supp. Mot. J. on Pleadings 5–7 [hereinafter "Pl.'s Supp. Br."], ECF No. 30; Def. Matthews' Br. Resp. and Opp'n to Pl.'s Rule 12(c) Mot. J. on Pleadings 6 [hereinafter "Def.'s Opp'n Br."], ECF No. 43.)

58. Matthews argues in opposition that while he agrees that his first and third counterclaims are for recoupment, application of either the "logical relationship test" or the "integrated transaction test" entitles him to reduce all damages awarded on those counterclaims against damages awarded on *any* of CCSEA's claims—including CCSEA's claims for breach of fiduciary duty and constructive fraud—because CCSEA's newly pleaded claims are "inextricably intertwined" with "Matthews taking compensation under the alleged employment contract." (Def.'s Opp'n Br. 6–12.)

59. The Court agrees with CCSEA. To begin, CCSEA's claims for breach of contract and Matthews' first and third counterclaims unquestionably arise from the employment relationship between CCSEA and Matthews. The same cannot be said for CCSEA's breach of fiduciary duty and constructive fraud claims because those claims arise from Matthews' fiduciary duties to CCSEA as an alleged director and officer. Matthews' employment relationship with CCSEA stands separately and independently from Matthews' fiduciary duties. As a result, the Court concludes that any damages Matthews may recover from CCSEA on his first and third counterclaims do not arise out of the same transaction (i.e., his employment relationship with CCSEA) as do CCSEA's claims for breach of fiduciary duty and constructive fraud (his relationship to CCSEA as an alleged officer and director).

60. Matthews' resort to either the "logical relationship test" or the "integrated transaction test" does not change this result. Indeed, those tests have traditionally been applied to determine whether competing contractual claims arise out of the

same contract[40]—not, as attempted here, to determine whether contractual and non-contractual claims arise out of the same contract or transaction. Significantly, neither the parties nor the Court have been able to locate a single case where either of these tests has been used to permit a recoupment claim against a non-contractual claim as Matthews urges here.

61. Accordingly, the Court concludes that CCSEA's motion should be granted and a declaratory judgment entered determining that any damages Matthews may recover on his first and third counterclaims may reduce an award of damages that CCSEA may obtain on its breach of contract and Wage and Hour Act claims but not on its other claims.[41]

---

[40] The Fourth Circuit has not specifically adopted one test over the other but has offered guidance that "[r]ecoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff *arising out of the very contract giving rise to the plaintiff's claim.*" *FDIC v. Marine Midland Realty Credit Corp.*, 17 F.3d 715, 722 (4th Cir. 1994) (emphasis added). *See, e.g.*, *In re Thompson*, 182 B.R. 140, 149 (Bankr. E.D. Va. 1995), *aff'd*, 92 F.3d 1182 (4th Cir. 1996) (applying the integrated transaction test to hold that an employee's contractual right to disability benefits, which hinged on routine medical examinations, "represent[ed] a transaction distinct from his [contractual] eligibility for disability benefits" even though both sets of benefits arose from his employment); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1402–03 (9th Cir. 1996) (using the logical relationship test to affirm the award of recoupment to a creditor defendant when a debtor plaintiff breached a contract against the creditor defendant and a later agreement between the parties specifically incorporated by reference the breached contract).

[41] The parties have also advanced alternative arguments should the first and third counterclaims be deemed for set-off rather than recoupment. In that event, CCSEA argues that the claims are time-barred because they were pleaded for the first time more than three years after the claims accrued on 19 July 2012, the date CCSEA contends that Matthews' compensation claim ripened. (CCSEA's Reply Br. Supp. Mot. J. on Pleadings 3, ECF No. 53.) Matthews argues in opposition that the claims are timely because the "pleadings do not contain any dates which establish that the date(s) upon which the compensation and benefits due to be paid to Matthews were all necessarily" three years before he filed his counterclaims in the original action. (Def.'s Opp'n Br. 6.) The Court need not resolve these alternative arguments in light of the Court's conclusion that the counterclaims are in the nature of recoupment.

2. Matthews' Counterclaim for Set-Off/Recoupment for Failure to Make Distributions in Compliance with N.C.G.S. § 55-6-40

62. Through his second counterclaim, Matthews contends that CCSEA violated N.C.G.S. § 55-6-40 by distributing funds to Epes without making corresponding proportional distributions to Matthews. Matthews seeks damages from CCSEA as set-off or recoupment in the amount of his proportional share of dividends that were paid to Epes but not to Matthews, plus attorneys' fees and other expenses. In addition to his statutory claim, Matthews seeks payment of his share of unpaid dividends under "General Principals [sic] of Equity." (2021 Am. Countercl. ¶¶ 31–36.) CCSEA moves to dismiss, contending first that the statutory claim is time-barred as to distributions made on or after 8 January 2013, and second, that Matthews has failed to allege facts entitling him to the payment of dividends on either statutory or equitable grounds.

a. Statute of Limitations

63. CCSEA argues that because Matthews' counterclaim was filed as part of his amended counterclaims in the First Action on 8 January 2016, the claim should be deemed time-barred to the extent it is based on the alleged nonpayment of dividends that occurred more than three years prior to that date.[42] In opposition, Matthews argues that the tolling date is 20 August 2015, the date the counterclaims were originally filed, so that the counterclaim reaches conduct occurring on or after 20 August 2012. (Def.'s Opp'n Br. 12–13.) The Court agrees with Matthews.

---

[42] (Pl.'s Supp. Br. 7–10 (citing N.C.G.S. § 1-52 as the applicable statute of limitations).)

64.     Matthews filed a counterclaim in the First Action on 20 August 2015 seeking a set-off of all distributions made to Epes in violation of section 55-6-40 against any damages Matthews was found to owe to CCSEA.  (2015 Countercl. ¶¶ 24–30.) Although Matthews' initial counterclaim focused on CCSEA's payment of distributions to Epes without Matthews' "knowledge, consent, and/or approval," (2015 Countercl. ¶ 26), and the amended counterclaim is focused on CCSEA's failure to pay Matthews his proportional share of the dividends paid to Epes, the Court concludes that Matthews tolled the statute of limitations on his section 55-6-40 counterclaims when he invoked that section in the First Action.   Matthews' subsequent withdrawal of counterclaims on 8 January 2016 does not change this result, particularly because he expressly excepted his "defense/counterclaims of Set-off/Offset."  (Def.'s Notice of Withdrawal of 2015 Countercl. 3.)

b.   Whether the Claim Fails as a Matter of Law

65.     Apart from statute of limitations grounds, CCSEA contends that Matthews' counterclaims must be dismissed because they are inadequately pleaded under both section 55-6-40 and the equitable principles established in *Steele v. Locke Cotton Mills Co.*, 231 N.C. 636 (1950), and *Gaines v. Long Mfg. Co.*, 234 N.C. 331 (1951).  (Pl.'s Supp. Br. 7–10.)  On this ground CCSEA fares better.

66.     Section 55-6-40 permits a corporation to "make distributions to its shareholders subject to restriction by the articles of incorporation and the limitation in subsection (c)."  N.C.G.S. § 55-6-40(a).  Subsection (c) in turn provides that:

(c) No distribution may be made if, after giving it effect:

(1) The corporation would not be able to pay its debts as they become due in the usual course of business; or

(2) The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

N.C.G.S. § 55-6-40(c). Subsection (c) therefore prohibits an insolvent corporation from making distributions to its shareholders. *See, e.g.*, N.C.G.S. § 39-23.2(a)–(b) (providing that "[a] debtor is solvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets" and "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent.")

67. CCSEA moves to dismiss Matthews' counterclaim, contending that Matthews has failed to plead that CCSEA was solvent or had a surplus from which it could pay distributions at the time Matthews filed his counterclaim as required under section 55-6-40(c). Matthews responds that he pleaded throughout his amended counterclaims that CCSEA was solvent when it made the challenged distributions to Epes, which Matthews contends is the relevant time period for inquiry under the statute. The Court agrees with CCSEA.

68. Setting aside whether Matthews pleaded that CCSEA was solvent in the past, it remains that Matthews seeks to compel CCSEA to pay a distribution in the future. For such a payment to be permitted, the plain language of section 55-6-40(c) requires that CCSEA be solvent when the distribution is made. However, Matthews

did not plead that CCSEA was solvent when the amended counterclaim was filed or that CCSEA would be solvent at the time of any distribution upon entry of final judgment. At most, he has pleaded only that CCSEA was solvent when it distributed funds to Epes. (2021 Am. Countercl. ¶ 32.) That allegation would be relevant if CCSEA sought to recover the distributions paid to Epes in violation of section 55-6-40(c), but it has no bearing on the claim Matthews has pleaded—that CCSEA must pay him a distribution in the future.

69. Although considering a predecessor statute to section 55-6-40, the Supreme Court of North Carolina has explained why it makes sense that a corporation wishing to distribute funds to shareholders must be solvent at the time the distribution is made—and not at some prior point in time:

> Corporate surpluses, like riches, have wings. They are here today, and gone tomorrow. The presence of such a surplus on a particular occasion is not inconsistent with its absence nine months later. Hence, the fact that a corporation has accumulated profits on hand on October 11, 1949, cannot be fairly and reasonably inferred from the specific averment that it possessed such profits on January 1, 1949.

*Steele*, 231 N.C. at 642.

70. Indeed, the Supreme Court concluded in *Steele* that the corporation's solvency was so important that a stockholder wishing to compel a dividend "must allege in his complaint facts disclosing that the corporation has surplus or net profits available for the payment of the dividend . . . when he brings his action[.] *Id.*, 231 N.C. at 640. The Supreme Court reiterated this requirement the following year in *Gaines*. *Gaines*, 234 N.C. at 339 (requiring the stockholder to plead that "at the time of the commencement of the action funds were available for the payment of

dividends[.]"). Although neither case is controlling in applying the later-enacted section 55-6-40, *Steele* and *Gaines* nonetheless provide strong support for the policy judgment embodied in that statute and the Court's interpretation of that section as set forth above.

71. Matthews seeks to avoid this result by resorting to N.C.G.S. § 55-6-40(k), which provides that "[n]othing in [section 55-6-40] shall impair any rights which a shareholder may have on general principles of equity to compel the payment of dividends." N.C.G.S. § 55-6-40(k). But in light of the holdings and reasoning of *Steele* and *Gaines* and the policy judgment consistent with those decisions reflected in section 55-6-40(c), the Court is not prepared to conclude that section 55-6-40(k) permits the Court to compel an insolvent corporation to pay a dividend to a shareholder when there is no dissolution and winding up process to guarantee fairness to all creditors and shareholders. Accordingly, the Court concludes that Matthews' failure to plead that CCSEA was solvent at the time his counterclaim was filed or would be solvent at the time a distribution would be made is fatal to his claim as pleaded here.

72. For the foregoing reasons, therefore, the Court concludes that CCSEA's Motion should be granted and that Matthews' counterclaim seeking set-off or recoupment for failure to make distributions in compliance with section 55-6-40 should be dismissed.

3. Matthews' Fourth Counterclaim for Set-Off/Recoupment for Violation of N.C.G.S. § 55-12-02

73.    In the First Action, Matthews advanced a counterclaim seeking to recover damages for injury to CCSEA's property under N.C.G.S. § 55-12-02, which governs the disposition of assets by CCSEA. (2015 Countercl. ¶¶ 52–56.) The Court dismissed the counterclaim because it accrued to CCSEA, not Matthews, and had been settled and released by the Receiver. *See In re Se. Eye Ctr.-Pending Matters*, 2016 NCBC LEXIS at *24. Matthews acknowledges that he reasserted this counterclaim in the Second Action "out of an abundance of caution" in response to CCSEA's newly pleaded claims. (Def.'s Opp'n Br. 18.) Nothing has changed since the Court's earlier ruling, so the Court concludes that this counterclaim should be dismissed for the same reasons the Court dismissed the nearly identical counterclaim in the First Action. *See In re Se. Eye Ctr.-Pending Matters*, 2016 NCBC LEXIS 59 at *24.

III.

CONCLUSION

74.    **WHEREFORE**, for the reasons set forth above, the Court hereby **GRANTS in part** and **DENIES in part** Matthews' Motion as follows:

a. Matthews' Motion as to CCSEA's claim for breach of fiduciary duty is hereby **GRANTED** and that claim is hereby dismissed with prejudice to the extent it is based on CCSEA's allegations that Matthews was overcompensated during his employment

with CCSEA, that CCSEA was insolvent during the period of Matthews' employment, or that Matthews mismanaged CCSEA;

b. Matthews' Motion as to CCSEA's UDTPA claim under section 75-1.1 is hereby **GRANTED** and that claim is hereby dismissed with prejudice;

c. Matthews' Motion as to CCSEA's claims for constructive fraud and restitution and disgorgement is hereby **DENIED**.

d. Matthews' Motion as to CCSEA's purported claim for punitive damages is hereby **GRANTED in part** and that purported claim is hereby dismissed with prejudice to the extent it is pleaded as a standalone claim. Further, to the extent the Court has dismissed claims under Rule 12(c) herein, punitive damages cannot be awarded as incidental damages to those claims. The Court's rulings in no way impair CCSEA's right to seek punitive damages as a remedy, where appropriate, for its remaining claims.

75. The Court hereby **GRANTS in part** and **DENIES in part** CCSEA's Motion as follows:

a. CCSEA's Motion as to Matthews' counterclaims for set-off/recoupment in connection with CCSEA's claims for breach of the Employment Agreement and violation of the North Carolina Wage and Hour Act is hereby **GRANTED** and the Court therefore determines and declares that (i) Matthews' first counterclaim for

breach of the Employment Agreement and third counterclaim for violation of the North Carolina Wage and Hour Act seek recoupment rather than set-off and (ii) any damages Matthews may recover on these two counterclaims may reduce an award of damages that CCSEA may obtain on its breach of contract or Wage and Hour Act claims but not on its other claims;

b. CCSEA's Motion as to Matthews' counterclaim for set-off/recoupment for failure to make distributions in compliance with N.C.G.S. § 55-6-40 is hereby **GRANTED** and that claim is hereby dismissed with prejudice;

c. CCSEA's Motion as to Defendant's counterclaim for set-off/recoupment for violation of N.C.G.S. § 55-12-02 is hereby **GRANTED** and that claim is hereby dismissed with prejudice.

**SO ORDERED**, this the 16th day of March, 2022.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge